1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   SANDIPKUMAR TANDEL,                    No. 2:11-cv-00353-MCE-GGH
                                            (Consolidated with case
12            Plaintiff,                    No. 2:09-cv-00842-MCE-GGH)
          v.
13
     COUNTY OF SACRAMENTO, et al.,
14                                          MEMORANDUM AND ORDER
              Defendants.
15

16                         ----oo0oo----

17        Plaintiff Sandipkumar Tandel ("Plaintiff") seeks redress for

18   several federal and state law claims alleging that the County of

19   Sacramento ("County"), Sheriff of Sacramento County, John

20   McGinness ("McGinness"), Chief of Sacramento County Jail

21   Correctional Health Services, Ann Marie Boylan ("Boylan"),

22   Medical Director of Sacramento County Jail, Michael Sotak, M.D.

23   ("Sotak"), Susan Kroner, R.N. ("Kroner"), Agnes R. Felicano, N.P.

24   ("Felicano"), James Austin, N.P. ("Austin"), Richard L. Bauer,

25   M.D. ("Bauer"), Gregory Sokolov, M.D. ("Sokolov"), Keelin Garvey,

26   M.D. ("Garvey"), John Ko, M.D. ("Ko"), Glayol Sahba, M.D.

27   ("Sahba"), and Officer John Wilson ("Wilson") violated

28   Plaintiff's civil rights during Plaintiff's detention at the

                                  1

1  Sacramento County Main Jail from March 23, 2010 to May 10, 2010.

2  Plaintiff further claims that said Defendants committed certain

3  state-law violations.   In his First Amended Complaint ("FAC"),

4  Plaintiff seeks compensatory and punitive damages, attorneys'

5  fees and costs, and declaratory relief.   Presently before the

6  Court is the Motion to Dismiss of Defendants County, McGinness,

7  Boylan, Sotak, Kroner, Felicano, Austin, Ko, Sahba, Bauer, and

8  Wilson (collectively "Defendants" or "County Defendants").   (See

9  County Defs.' Mot. to Dismiss Pl.'s First Am. Compl. ["MTD"],

10 filed June 21, 2011 [ECF No. 42]). Defendants Sokolov and Garvey

11 filed a Statement of Non-Opposition to County Defendants' motion

12 to dismiss. [ECF No. 52.]   For the reasons set forth below,

13 County Defendants' motion is granted in part and denied in part.[1]

14

15                     **BACKGROUND**[2]

16

17     This action arises out of the events that occurred during

18 Plaintiff's detention at the Sacramento County Main Jail ("Jail")

19 from March 23 to May 10, 2010.   However, the roots of this action

20 go back to Plaintiff's prior detention at the Jail in April-May

21 2007.   During his 2007 detention, Plaintiff developed symptoms of

22 a neurologic disease that was at first diagnosed as Acute

23 Disseminated Encephalomyelitis ("ADEM") and was later correctly

24 diagnosed as Neuromyelitis Optica ("NMO").

_____

25     [1] Because oral argument will not be of material assistance,
26 the Court ordered this mater submitted on the briefing.   E.D.
   Cal. R. 230(g).

27     [2] The following facts are taken from Plaintiff's First
   Amended Complaint ("FAC"), filed April 18, 2011 [ECF No. 22],
28 unless otherwise noted.

In 2007, Plaintiff was released from the Jail because of the nature and severity of his condition.  Following his release, Plaintiff achieved significant medical improvement with appropriate treatment through University of California, Davis, Medical Center ("UCD").  In 2009, Plaintiff filed a lawsuit against the County and a number of individual defendants under 42 U.S.C. § 1983 alleging his civil rights' violations during the 2007 detention.  (See Pl.'s Second Am. Compl., Case No. 2:09-cv-0842-MEC-GGH [ECF No. 43].)[3]

On March 23, 2010, Plaintiff was again arrested and detained as a pretrial detainee at the Jail.  At the time of his 2010 arrest, Plaintiff required a wheelchair and was unable to move from the nipple line down.  Plaintiff's medical record allegedly indicates that, during the 2010 detention, all Defendants were aware of Plaintiff's serious neurologic autoimmune disease and were aware that Plaintiff required appropriate treatment, including a combination of corticosteroids, plasmaphoresis, anti-inflammatory and pain medication, physical therapy, muscle stimulators, massage and chiropractic care.  According to Plaintiff, Defendants were also aware that Plaintiff suffered from osteoporosis and depression with suicidal ideation.  Plaintiff alleges that, for the entirety of his 2010 incarceration, Defendants denied Plaintiff necessary medical treatment despite Plaintiff's repeated requests for such treatment.

---

[3] On May 4, 2011, this Court granted Defendants' motion to consolidate the current case with Case No. 2:09-cv-842-MCE-GGH. [ECF No. 26.]

1    Plaintiff alleges that he requested but was not provided
2  enough catheters to adequately relieve his bladder; requested but
3  was denied adequate and timely suppositories and pads; and was
4  not provided adequate medication to control his pain.  As a
5  result, Plaintiff allegedly routinely urinated on himself and his
6  clothes, was left waiting for assistance in soiled clothes, did
7  not have bowel movement for days, and was in severe pain.
8  Specifically, Plaintiff alleges that the four catheters per day
9  he was supposed to receive according to his medical intake sheet
10 was not enough to relieve his bladder, and that he was routinely
11 provided less than four catheters per day.  Defendant Bauer
12 allegedly advised Plaintiff to reuse the catheters, thereby
13 increasing the risk of infection.

14    On March 25, 2010, Defendant Sahba allegedly placed
15 Plaintiff on a suicide watch.  Sahba determined that Plaintiff
16 should not be allowed a bed, and that Plaintiff should be placed
17 on a mattress on the floor without his clothes.  Defendants
18 Sokolov and Sotak allegedly were aware of this situation.
19 According to Plaintiff, the Jail's psychiatric unit was unable to
20 handle a patient who required catheters.  Therefore, Defendants
21 Sokolov, Sahba and Sotak knowingly left Plaintiff "to lay naked,
22 on a mattress on the floor, unable to adequately move, unable to
23 reach the call button, in severe pain, under-medicated, and
24 without adequate supplies or treatment to urinate or defecate
25 cleanly and regularly."  (FAC ¶ 63.)  As a result, Plaintiff
26 allegedly urinated on himself numerous times, was unable to have
27 regular bowel movements and developed bed sores.
28 ///

Because custodial officers at the Jail allegedly routinely interfered with Plaintiff's access to medical care, Plaintiff's bed sores worsened.

On March 28, 2010, Plaintiff was moved to a non-medical unit of the Jail where he continued to be denied adequate pain medication, medical treatment and medical supplies.  On April 9, 2010, Plaintiff complained to the Jail's medical staff of burning on the tip of his penis but was left in severe pain without adequate medical treatment for the next few weeks.  Plaintiff's neighboring inmate pressed the call button on Plaintiff's behalf several times after hearing Plaintiff screaming in agony, but the medical staff never responded.  On April 13, 2010, Defendant Bauer finally prescribed an antibiotic to Plaintiff to treat what had become a stage 1 ulcer on his leg and a urinary tract infection.

When Plaintiff was scheduled to go to the medical unit to receive antibiotic treatment, Defendant Wilson allegedly threatened to "drag" Plaintiff to the medical unit if Plaintiff did not hurry.  When Plaintiff was taken to the medical unit, he was left there for a significant amount of time before he saw a medical provider.

By April 22, 2010, Plaintiff had been complaining to the Jail's medical staff of blurry vision in his left eye for at least two weeks.  Defendant Kroner allegedly performed a vision exam but failed to request a necessary neurological referral.  On April 23, Plaintiff again complained of penile burning, pain in his eye and vision problems.  On April 23, 2010, Defendant Sahba documented Plaintiff's left eye blurriness with history of ADEM.

Sahba requested urinalysis and blood work with follow-up in two weeks.  Sahba also prescribed an antifungal to Plaintiff.

Defendant Bauer allegedly conceded in the medical record that Plaintiff's pain had not been well-controlled on Tramadol or Neurontin and prescribed Narco-5 from April 15 through April 28, 2010.  On April 27-28, 2010, Plaintiff was also prescribed Morphine to control his pain.  On May 4, 2010, Plaintiff reported to Defendant Doe that he had been experiencing episodes of double vision lasting up to 20 minutes at a time, but Defendant Doe failed to engage neurology or provide adequate testing.  Plaintiff allegedly lost weight and muscle strength due to ineffective physical therapy and inadequate diet.  He was allegedly unable to eat the food he was served because it conflicted with his religious beliefs.

On May 10, 2010, after weeks of complaints about symptoms allegedly indicative of an NMO attack, including headaches, blurry vision, loss of extremity control, uncontrolled pain, clinical signs of infection, and preventable bedsores/ulcers, medical Defendants finally transferred Plaintiff to UCD where MRI results confirmed acute right optic neuritis.  Plaintiff alleges that medical Defendants' deliberate indifference resulted in and/or increased the acuteness of his attack and accelerated the recurrence of his disease, which resulted in irreversible damage to new areas of myelin, causing cumulative and permanent disfigurement and disability, decreasing Plaintiff's future opportunity for rehabilitation and decreasing his life expectancy.

///

1

2

**STANDARD**

3       On a motion to dismiss for failure to state a claim under

4  Federal Rule of Civil Procedure 12(b)(6),[4] all allegations of

5  material fact must be accepted as true and construed in the light

6  most favorable to the nonmoving party.  Cahill v. Liberty Mut.

7  Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  The Court must

8  also assume that "general allegations embrace those specific

9  facts that are necessary to support a claim."  Smith v. Pacific

10 Props. & Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004).  Rule

11 8(a)(2) "requires only 'a short and plain statement of the claim

12 showing that the pleader is entitled to relief,' in order to

13 'give the defendant a fair notice of what the [. . .] claim is

14 and the grounds upon which it rests.'"  Bell. Atl. Corp. v.

15 Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson,

16 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6)

17 motion to dismiss does not require detailed factual allegations.

18 Id.  However, "a plaintiff's obligation to provide the grounds of

19 his entitlement to relief requires more than labels and

20 conclusions, and a formulaic recitation of the elements of a

21 cause of action will not do."  Id.  (internal citations and

22 quotations omitted).  A court is not required to accept as true a

23 "legal conclusion couched as a factual allegation."  Ashcroft v.

24 Iqbal,129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at

25 555).

26 ///

27 _____

28      [4] All further references to "Rule" or "Rules" are to the
Federal Rules of Civil Procedure unless otherwise noted.

The Court also is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than a "statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

///

///

1     A court granting a motion to dismiss a complaint must then
2  decide whether to grant a leave to amend.  Leave to amend should
3  be "freely given" where there is no "undue delay, bad faith or
4  dilatory motive on the part of the movant, . . . undue prejudice
5  to the opposing party by virtue of allowance of the amendment,
6  [or] futility of the amendment . . . ."  Foman v. Davis, 371 U.S.
7  178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d
8  1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
9  be considered when deciding whether to grant leave to amend).
10  Not all of these factors merit equal weight.  Rather, "the
11  consideration of prejudice to the opposing party . . . carries
12  the greatest weight."  Eminence Capital, 316 F.3d at 1052 (citing
13  DCD Programs, Ltd. v. Leighton, 833 F. 2d 183, 185 (9th Cir.
14  1987)).  Dismissal without leave to amend is proper only if it is
15  clear that "the complaint could not be saved by any amendment."
16  Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056
17  (9th Cir. 2007) (internal citations and quotations omitted).
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

9

**ANALYSIS**

The Court examines Plaintiff's claims in the following order: (1) Plaintiff's claims against all individual Defendants in their official capacities (First, Sixth, Eighth, Ninth and Eleventh Claims for Relief); (2) Plaintiff's § 1983 claims for failure to provide appropriate medical care against all individual Defendants in their individual capacities (First Claim for Relief); (3) Plaintiff's § 1983 claim for violation of the First Amendment against all individual defendants in their individual capacities (Sixth Claim for Relief); (4) Plaintiff's Monell liability claims against Sacramento County (Second, Third, Fourth, Fifth, and Seventh Claims for Relief); (5) Plaintiff's claim under the Americans with Disabilities Act and Rehabilitation Act (Eighth Claim for Relief); and (6) Plaintiff's three state-law claims (Ninth, Tenth and Eleventh Claims for Relief).[5]

///
///
///
///
///

---

[5] Plaintiff does not oppose dismissal of the County from claims 1, 6 and 11 of the FAC. (See Pl.'s Opp. to Defs.' Mot. to Dismiss, filed August 23, 2011 [ECF No. 57], at 27:26-26:1.) Plaintiff also does not oppose dismissal of individually named supervisory Defendants alleged to act in their official capacity from the Monell claims 2, 3, 4, 5 and 7. (See id. at 27:18-25.) Accordingly, the Court dismisses the County from Counts 1, 6 and 11, and dismisses all individual supervisory defendants when alleged to be acting in their official capacity from claims 2,3,4,5, and 7 of the FAC.

10

I.   Claims Against Defendants McGinness, Boylan, Sotak,
     Kroner, Felicano, Austin, Ko, Sahba, Bauer, and Wilson
     in Their Official Capacities

The SAC names official capacity Defendants in all eleven claims for relief.  Because Plaintiff agreed to dismiss official capacity Defendants from claims 2, 3, 4, 5, and 7 (Monell claims), what remains for the Court's consideration is whether official capacity Defendants should also be dismissed from claims 1, 6, 8, 9, 10 and 11.

Defendants contend that, based on Plaintiff's identification, the only Defendants who could be named in official capacities are McGinness, Boylan and Sotak.  (MTD at 5:4-8.)  Defendants further contend that all of Plaintiff's claims against official capacity Defendants should be dismissed as redundant. (Id. at 5:9-16.)  Specifically, Defendants argue that suing an official capacity defendant is legally equivalent to suing a governmental entity.  (Id. at 5:1-3.)  Defendants further argue that, because Plaintiff named the County as a Defendant in all six claims at issue, official capacity Defendants named in these claims are redundant defendants and should be dismissed.  (Id. at 5:9-16.)  Plaintiff has failed to oppose or otherwise address Defendants' contentions.

Defendants are correct in stating that suing an official capacity person is legally equivalent to suing the governmental entity.  Kentucky v. Graham, 473 U.S. 159, 165-166 (1985).  "[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents."

11

Brandon v. Holt, 469 U.S. 464, 472 (1985); see also McMillian v. Monroe County, 520 U.S. 781, 785 n.2 (1997) ("[V]ictory in . . . an 'official capacity' suit 'imposes liability on the entity that [the officer] represents.'"). Thus, for the purposes of evaluating the municipality's potential liability under § 1983, the actions of an official capacity defendant are equated with the actions of the municipality. Id. "When both a municipal officer and a local government entity are named, and the officer is named only in his official capacity, the court may dismiss the officer as a redundant defendant." Ctr. For Bio-Ethical Reform, Inc. v. L.A. County Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008).

Because Plaintiff has stipulated to the dismissal of the County from claims 1, 6 and 11, and has stipulated to the dismissal of official capacity Defendants from claims 2, 3, 4, 5 and 7, three remaining claims (claims 8, 9 and 10) still name both the County and official capacity Defendants. Accordingly, the Court dismisses all official capacity Defendants, as redundant, from Plaintiff's eighth, ninth and tenth claims for relief with leave to amend.

While Plaintiff has agreed to dismiss the County from claims 1, 6 and 11, he neither explicitly agreed to dismiss official capacity Defendants from these claims nor explicitly opposed Defendants' argument for such dismissal.

///

///

///

///

12

Because "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," Brandon v. Holt, 469 U.S. 464, 472 n.21 (1985), the Court interprets Plaintiff's stipulation to dismiss the County from claims 1, 6 and 11 to mean that Plaintiff also has agreed to dismiss all official capacity Defendants from these claims.

Accordingly, the Court grants Defendants' motion to dismiss all official capacity Defendants from the FAC with leave to amend.

II.   First Claim for Relief: Claims Brought Pursuant to 42 U.S.C. § 1983 for Violations of the Fourteenth Amendment for Failure to Provide Appropriate Medical Care against McGinness, Boylan, Sotak, Kroner, Felicano, Austin, Ko, Sahba, Bauer and Wilson in Their Individual Capacities

The FAC alleges that all individual Defendants failed to provide appropriate medical care to Plaintiff, and that Plaintiff suffered and continues to suffer personal disability and injury as a result of Defendants' conduct.  (FAC ¶¶ 98, 99.)

///

///

///

///

///

///

///

13

In particular, Plaintiff alleges that all Defendants: (1) failed to provide Plaintiff with necessary medical treatment; (2) failed to monitor Plaintiff once he reported an exacerbation of his preexisting and known serious neurological disorder; (3) failed to transport Plaintiff to a hospital or appropriate diagnostic facility upon initial symptoms indicating an exacerbation of a serious preexisting, known neurological condition; (4) failed to maintain appropriate medical records and history; and (5) failed to supply UCD with Plaintiff's accurate medical history upon transport. (Id. ¶ 98.)

Defendants argue that Plaintiff's first claim should be dismissed because Plaintiff groups all the Defendants together and fails to make specific allegations as to how each Defendant violated Plaintiff's constitutional rights in failing to provide adequate medical care. (MTD at 7:8-10). To the extent that Plaintiff alleges supervisory responsibility of some Defendants, Defendants argue that Plaintiff failed to state a claim because he failed to allege personal participation by each supervisory Defendant in the alleged constitutional deprivation, or that each supervisory Defendant directed any actions that caused violations of Plaintiff's rights, or that each supervisory Defendant was aware of widespread abuses and, with deliberate indifference, failed to act. (Id. at 7:26-8:2.)

Under 42 U.S.C. § 1983, an individual may sue "[e]very person, who, under color of [law] subjects" him "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

///

Individual capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer v. Melo, 502 U.S. 21, 25 (1991).  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Iqbal, 129 S. Ct. at 1948.  Rather, an individual may be liable for deprivation of constitutional rights "within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007).  Thus, a plaintiff cannot demonstrate that an individual officer is liable "without a showing of individual participation in the unlawful conduct." Jones v. Williams, 297 F.3d 930, 935 (9th Cir. 2002).  Plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation," id., which requires "some fundamental involvement in the conduct that allegedly caused the violation." Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12 (9th Cir. 2007).

Government officials acting as supervisors may be liable under § 1983 under certain circumstances.  "[W]hen a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinate." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

///

15

A defendant may be held liable as a supervisor under § 1983 if there exists "either (1) his or her personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Starr, 652 F.3d at 1207.

A supervisor's physical presence is not required for supervisory liability. Starr, 652 F.3d at 1205. Rather, the requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's Constitutional rights can be established in a number of ways. The plaintiff may show that the supervisor set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. Dubner v. City & County of S.F., 266 F.3d 959, 968 (9th Cir. 2001); Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991). Similarly, a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates may establish supervisory liability. Starr, 652 F.3d at 1208; Larez, 946 F.2d at 646. Finally, a supervisor's acquiescence in the alleged constitutional deprivation, or conduct showing deliberate indifference toward the possibility that deficient performance of the task may violate the rights of others, may establish the requisite causal connection. Starr, 652 F.3d at 1208; Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005).

///

///

16

As opposed to prisoner claims under the Eighth Amendment, a pretrial detainee is entitled to be free of cruel and unusual punishment under the Due Process Clause of the Fourteenth Amendment. <u>Bell v. Wolfish</u>, 441 U.S. 520, 537 n. 16 (1979); <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).  The Due Process Clause requires that "persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs." <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175, 1187 (9th Cir. 2002) (quoting <u>Carnell v. Grimm</u>, 74 F.3d 977, 979 (9th Cir. 1996)).  A pretrial detainee's due process right in this regard is violated when a jailer fails to promptly and reasonably procure competent medical aid when the pretrial detainee suffers a serious illness or injury while confined. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-105 (1976).  Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." <u>Id.</u>  In order to establish a plausible claim for failure to provide medical treatment, Plaintiff must plead sufficient facts to permit the Court to infer that (1) Plaintiff had a "serious medical need" and that (2) individual Defendants were "deliberately indifferent" to that need.  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006); <u>Cf.</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 837 (1994).

///

///

///

1    Plaintiff can satisfy the "serious medical need" prong by

2  demonstrating that "failure to treat [his] condition could result

3  in further significant injury or the unnecessary and wonton

4  infliction of pain." Jett, 439 F.3d at 1096 (internal citations

5  and quotations omitted); Clement v. Gomez, 298 F.3d 898, 904

6  (9th Cir. 2002).  County Defendants do not dispute that the FAC's

7  allegations are sufficient to demonstrate that Plaintiff

8  plausibly had a serious medical need during his 2010 detention.

9    Thus, the issue for the Court is whether individual

10  Defendants were deliberately indifferent to Plaintiff's serious

11  medical need.  The Supreme Court, in Farmer, explained in detail

12  the contours of the "deliberate indifference" standard.

13  Specifically, individual Defendants are not liable under the

14  Fourteenth Amendment for their part in allegedly denying

15  necessary medical care unless they knew "of and disregard[ed] an

16  excessive risk to [Plaintiff's] health and safety." Farmer,

17  511 U.S. at 837; Gibson, 290 F.3d at 1187-88.  Deliberate

18  indifference contains both an objective and subjective component:

19  "the official must both be aware of facts from which the

20  inference could be drawn that a substantial risk of serious harm

21  exists, and he must also draw that inference." Farmer, 511 U.S.

22  at 837.  "If a person should have been aware of the risk, but was

23  not," then the standard of deliberate indifference is not

24  satisfied "no matter how severe the risk." Gibson, 290 F.3d at

25  1188 (citing Jeffers v. Gomez, 267 F.3d 895, 914 (9th Cir.

26  2001)).

27  ///

28  ///

18

Plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall on inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  Farmer, 511 U.S. at 842.

Important for purposes of the motions at issue, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. (emphasis added) (internal citations omitted); see also Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003) ("Much like recklessness in criminal law, deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm.").

"The indifference to medical needs must be substantial; a constitutional violation is not established by negligence or 'an inadvertent failure to provide adequate medical care.'" Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995) (quoting Estelle, 429 U.S. at 105-06).  Generally, defendants are "deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment."  Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lolli, 351 F.3d at 419.  However, "[i]solated incidents of neglect do not constitute deliberate indifference."

///

1 <u>Bowell v. Cal. Substance Abuse Treatment Facility at Concord</u>,

2 No. 1:10-cv-02336, 2011 WL 2224817, at *3 (E.D. Cal. June 7,

3 2011) (citing <u>Jett</u>, 439 F.3d at 1096).  Further, a mere delay in

4 receiving medical treatment, without more, does not constitute

5 "deliberate indifference," unless the plaintiff can show that the

6 delay caused serious harm to the plaintiff.  <u>Wood v. Housewright</u>,

7 900 F.2d 1332, 1335 (9th Cir. 1990).

8        Plaintiff generally alleges that each of the Defendants

9 caused and is responsible for the unlawful conduct by personally

10 participating in the conduct, or by authorizing or acquiescing in

11 the conduct, or by promulgating or failing to promulgate policies

12 and procedures pursuant to which the unlawful conduct occurred.

13 (FAC ¶ 27.) Plaintiff further alleges that all Defendants were

14 aware of Plaintiff's serious medical condition and were aware

15 that Plaintiff required medical treatment. (FAC ¶¶ 46-52.)

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1    (1) *Defendant McGinness*

2

3    The facts in the FAC alleged specifically against McGinness

4    are as follows: (1) McGinness was, at all relevant time, the

5    Sacramento County Sheriff; (2) McGinness was, at all relevant

6    times, the responsible party and the final decision maker for the

7    hiring, retention, screening, supervision, training, instruction,

8    discipline, control, equipping and conduct of Defendants

9    custodial and medical staff; (3) McGinness was charged with

10   promulgating all orders, policies, protocols, practices, customs,

11   rules, instructions and regulations of the Sacramento County

12   Sheriff's Department ("SCSD") including but not limited to those

13   concerning the safety of pat-searches and inmate safety; (4) in

14   committing the alleged acts and omissions, McGinness was acting

15   under color of state law and within the course and scope of his

16   employment as Sheriff of the SCSD. (FAC ¶ 16.)

17   As was discussed earlier, to sustain a § 1983 claim for

18   individual liability, Plaintiff must establish the "personal

19   involvement" of each defendant, including supervisors, in a

20   constitutional deprivation or a "causal connection" between each

21   defendant's wrongful conduct and the deprivation.  <u>Hansen</u>,

22   885 F.2d at 646.  Plaintiff's allegations that McGinness was

23   employed as the County Sheriff and that he was acting within the

24   scope of his employment are insufficient to demonstrate either

25   his "personal involvement" in the alleged constitutional

26   deprivation or the "causal connection" between McGinness' actions

27   or omissions and the deprivation.

28   ///

Plaintiff's allegations that McGinness's job duties included
promulgating policies and rules concerning inmate safety and that
he was the final decision maker for the hiring, training,
supervision and disciplining of Jail personnel similarly are
insufficient to plausibly demonstrate McGinness' "personal
involvement" in the alleged constitutional deprivations.  These
allegations also do not plausibly suggest any causal connection
between McGinness' conduct and Plaintiff's deprivation because
the FAC is silent as to what McGinness' decisions or orders
caused Plaintiff's harm.

In his opposition to Defendants' motions to dismiss,
Plaintiff relies on Redman v. County of San Diego, 942 F.2d 1435
(9th Cir. 1990), and Starr, 652 F.3d 1202, in asserting that,
under California law, the Sheriff is required by statute to take
charge of and keep the county jail and the prisoners in it, and
is answerable for the prisoners' safekeeping.  (Pl.'s Opp. at
14:2-14:4.)  Inactions of the person "answerable for the prison's
safekeeping," Plaintiff argues, is sufficient to state a claim
for supervisory liability for deliberate indifference.  (Id. at
14:9-14.)  County Defendants respond that, in both Redman and
Starr, plaintiffs alleged specific facts as to how the Sheriff
was liable as a supervisor and how the Sheriff's actions or
inactions caused the plaintiff's constitutional deprivation.
(County Defs.' Reply to Pl.'s Opp., filed August 30, 2011 [ECF
No. 61], at 5:25-6:4.)

///

///

///

1   Defendants argue that Plaintiff here, unlike plaintiffs in <u>Redman</u>

2   and <u>Starr</u>, failed to make any specific allegations to demonstrate

3   McGinness' supervisory liability. (<u>Id.</u> at 6:9-15.)  The Court

4   agrees with County Defendants.

5          In <u>Redman</u>, a plaintiff specifically alleged that the Sheriff

6   was ultimately in charge of the facility's operations, that the

7   Sheriff knew that the facility was not a proper place to detain

8   the plaintiff and posed a risk of harm to the plaintiff, but

9   placed the plaintiff there anyway.  <u>Redman</u>, 942 F.2d at 1446-47.

10  In <u>Starr</u>, the plaintiff similarly alleged that the Sheriff knew

11  of the unconstitutional activities in the jail, including that

12  his subordinates were engaging in some culpable actions.  <u>Starr</u>,

13  652 F.3d at 1208.  In fact, the plaintiff's complaint in <u>Starr</u>

14  contained numerous specific factual allegations demonstrating the

15  Sheriff's knowledge of unconstitutional acts at the jail and the

16  Sheriff's failure to terminate those acts, including that the

17  U.S. Department of Justice gave the Sheriff clear written notice

18  of a pattern of constitutional violations at the jail, that the

19  Sheriff received "weekly reports from his subordinates

20  responsible for reporting deaths and injuries in the jails," that

21  the Sheriff personally signed a Memorandum of Understanding that

22  required him to address and correct the violations at the Jail,

23  and that the Sheriff was personally made aware of numerous

24  concrete instances of constitutional deprivations at the jail.

25  <u>Id.</u> at 1209-12.

26  ///

27  ///

28  ///

Here, on the other hand, Plaintiff's FAC does not contain *any* factual allegations demonstrating that McGinness was aware of Plaintiff's constitutional deprivations or of any other wrongful acts by Jail personnel.  Thus, nothing in the FAC plausibly suggests that McGinness "acquiesced" in the wrongful conduct of his subordinates.  Accordingly, Plaintiff has not pleaded sufficient facts to support the inference that McGinness was deliberately indifferent to Plaintiff's medical needs.  The Court dismisses Defendant McGinness from Plaintiff's first claim with leave to amend.

*(2) Defendant Boylan*

Plaintiff's specific allegations against Boylan are limited to the following statements: (1) Boylan was at all relevant times employed by the County as Chief of the Sacramento County Jail Correctional Health Services ("CHS"); and (2) Boylan was at all relevant times acting within the scope of her employment and/or agency with the County.  (FAC ¶ 17.)  Plaintiff has not alleged that Boylan participated in or directed alleged violations, or knew of the violations and failed to act.  In his opposition, Plaintiff argues that it is reasonable to infer that Boylan, because of her position as the CHS Chief for the Jail, was responsible for and knew of the pervasive deficiencies in the Jail's delivery of medical care.  (Pl.'s Opp. at 14:4-9.)  The Court finds Plaintiff's contention unavailing.

///

///

24

Nowhere in the FAC does Plaintiff allege that Boylan, as a supervisor, knew or reasonably should have known of any "pervasive deficiencies" in the provision of medical care at the Jail and refused to cure these deficiencies, or that Boylan's own culpable action or inaction in the training, supervision, or control of her subordinates were the cause of the alleged constitutional deprivation, or that Boylan acquiesced in the alleged constitutional deprivation.  A mere recitation of the defendant's official title is not sufficient, by itself, to infer that the defendant should be individually liable for Plaintiff's constitutional deprivations.  Accordingly, Defendants' Motion to Dismiss Plaintiff's first claim against Defendant Boylan is granted with leave to amend.

*(3) Defendant Sahba*

Plaintiff alleges that (1) Sahba was employed as a physician by the County to provide medical treatment to inmates at the Jail and was one of the physicians responsible for providing treatment to Plaintiff (FAC ¶ 19); (2) on March 25, 2010, Sahba ordered Plaintiff to be placed on suicide watch and determined that Plaintiff's clothes should be removed, that Plaintiff be provided with two blankets, that Plaintiff would not be allowed a bed, and that Plaintiff would be placed on a mattress on the floor (Id. ¶ 60); (3) Plaintiff complained to Sahba that it was difficult for him to move, and, that because of his osteoporosis, he experienced increased pain when left in one position for a period of time and when not provided a soft surface (Id. ¶ 61);

(4) however, Sahba knowingly left Plaintiff to lay naked, on a mattress on the floor, unable to adequately move, unable to reach the call button, in severe pain, under-medicated and without adequate supplies or treatment to urinate or defecate cleanly and regularly (Id. ¶¶ 61,63); (5) as a result, Plaintiff urinated on himself numerous times, was unable to have regular bowel movements and developed bed sores (Id. ¶ 64); (6) Defendants, including Sahba, were aware that Plaintiff developed painful sores on his inner knees and buttocks as a result of his inability to move himself from side to side (Id. ¶ 65); (7) on April 23, 2010, Sahba provided a neurological consultation to Plaintiff, indicated left eye blurriness with history of ADEM, requested urinalysis and blood work with follow up in two weeks, and prescribed antifungal medication in response to continued severe urethral pain which continued despite the antibiotic treatment. (Id. ¶ 78.)

The Court finds that, based on the general and specific factual allegations in the FAC and reasonable inferences, it is plausible that Sahba knew of and was deliberately indifferent to Plaintiff's serious medical condition. Although Plaintiff's allegations concerning a neurological consultation provided to him by Sahba do not plausibly suggest Sahba's deliberate indifference to Plaintiff's serious medical needs, the Court can plausibly infer such deliberate indifference from the suicide watch episode.

///
///
///

26

Sahba allegedly knew that Plaintiff was suffering from osteoporosis, that Plaintiff required a soft surface, that Plaintiff experienced pain when left in one position, that it was difficult for Plaintiff to move and that Plaintiff required a wheelchair and was unable to move from the nipple line down. (Id. ¶¶ 48,61.)  Knowing all these facts, Sahba ordered that Plaintiff be placed naked on a mattress on the floor where Plaintiff could not reach the call button and without adequate medical supplies. (Id. ¶¶ 60,63.)  As a result, Plaintiff allegedly developed painful bed sores on his inner knees and buttocks.  (Id. ¶¶ 64-65.)

Moreover, "subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."  See Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995).  Plaintiff alleges that, while placed on suicide watch, he repeatedly urinated on himself and was unable to have regular bowel movements.  (FAC ¶ 64.) The FAC does not clearly indicate for how long Plaintiff stayed on suicide watch.  According to Plaintiff, he was placed on suicide watch on March 25, 2010, and was transferred to a non-medical unit on March 28, 2010.  (Id. ¶¶ 60,66.)  Thus, the Court can plausibly infer that Plaintiff spent at least three days on suicide watch, during which time he repeatedly urinated on himself, was unable to adequately move, and was unable to reach the call button.  (Id. ¶¶ 63-64.)  The Court finds this time period to be sufficiently long to plausibly demonstrate a constitutional deprivation.

///

See, e.g., McCray v. Burrell, 516 F.2d 357, 365-68 (4th Cir. 1975) (concluding that the placement of a naked mentally ill inmate in an isolation cell, with nothing but a mattress and without essential articles of hygiene, for a period of 48 hours satisfied the objective element of the Eighth Amendment violation); Gates v. Collier, 501 F.2d 1291, 1305 (5th Cir. 1974) ("It is unassailable that the solitary confinement of naked persons in [the prison's] dark hole, without any hygienic materials, and bedding, . . . without opportunity for cleaning either themselves or the cell, and for longer than twenty-four hours continuously, is constitutionally forbidden under the Eighth Amendment.").

Plaintiff's allegations plausibly demonstrate that "the course of treatment [Sahba] chose was medically unacceptable under the circumstances . . . and . . . that [he] chose this course in conscious disregard of an excessive risk to plaintiff's health." See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986). Accordingly, the Court denies Defendants' motion to dismiss Defendant Sahba from Plaintiff's first claim for relief.

///
///
///
///
///
///
///
///
///

*(4) Defendant Sotak*

Plaintiff alleges that, at all relevant times, (1) Sotak was employed by the County as Medical Director of the Jail CHS and was acting within the scope of his employment and/or agency with the County; (3) Sotak was employed as a physician by the County to provide medical treatment to Jail inmates; and (4) Sotak was one of the physicians responsible for providing treatment to Plaintiff.  (FAC ¶¶ 18-19.)  Plaintiff further alleges that Sotak knew about the problems associated with Plaintiff being placed on suicide watch, but "knowingly left Plaintiff to lay naked, on a mattress on the floor, unable to adequately move, unable to reach the call button, in severe pain, under-medicated, and without adequate supplies or treatment to urinate or defecate cleanly and regularly." (Id. ¶¶ 60-63.)

The Court finds Plaintiff's allegations against Sotak sufficient to state a claim of deliberate indifference under § 1983 against a supervisor.  Taking as true Plaintiff's specific allegations that Sotak personally knew about the problems and risks associated with Plaintiff's placement on suicide watch but failed to rectify them, the Court can plausibly infer that Sotak knowingly refused to terminate the acts of his subordinates, in particular Defendant Sahba, which he knew or reasonably should have known would cause Plaintiff's constitutional deprivation. See Dubner, 266 F.3d at 968.  Accordingly, Defendants' Motion to Dismiss Plaintiffs' first claim against Defendant Sotak is denied.

///

1          *(5) Defendant Kroner*

2

3          Plaintiff alleges that (1) Kroner was employed by the County

4     to provide medical treatment to inmates at the Jail and was

5     acting within the scope of her employment and/or agency with the

6     County (FAC ¶ 20); (2) she was one of the medical providers

7     responsible for rendering medical care to Plaintiff during the

8     relevant time period (Id.); and (3) on April 22, 2010, Kroner

9     performed a vision exam in response to Plaintiff's complaints

10    about blurry vision in his left eye, but failed to request a

11    necessary neurological referral under the circumstances. (Id.

12    ¶ 76.)  Defendants argue that the FAC contains "no allegations

13    that RN Kroner's conduct was intentional or that she

14    intentionally denied, delayed or inferred [sic] with Plaintiff's

15    medical care," and no allegations that Kroner even knew that

16    Plaintiff required immediate referral and that failure to do so

17    would cause harm.  (Defs.' Reply at 4:12-16.)  The Court agrees

18    with Defendants.

19         Plaintiff bases his claim of deliberate indifference against

20    Kroner on a single episode when Kroner allegedly failed to

21    request a neurological referral in response to Plaintiff's

22    complaints of blurry vision.  A single incidence of "an

23    inadvertent or negligent failure to provide adequate medical care

24    . . . does not state a claim under § 1983." Jett, 439 F.3d at

25    1096 (internal quotation and alteration marks omitted).

26    ///

27    ///

28    ///

While Kroner's alleged failure to request a neurological referral might plausibly constitute negligence, nothing in the FAC suggests that Kroner deliberately disregarded the risk of serious harm to Plaintiff.  Plaintiff's own allegation demonstrates that Kroner responded to Plaintiff's complaints of blurry vision by evaluating him and performing a vision exam.  (FAC ¶ 76.)

Accordingly, the Court dismisses Defendant Kroner from the FAC's first claim with leave to amend.

*(6) Defendant Bauer*

Plaintiff alleges that (1) Bauer was employed as a physician by the County to provide medical treatment to inmates at the Jail and was one of the physicians responsible for providing treatment to Plaintiff (Id. ¶ 19); (2) Bauer advised Plaintiff to reuse his catheters, which increased Plaintiff's risk of infection because reused catheters were not sterile, (Id. ¶ 58); (3) on April 13, 2010, four days after Plaintiff complained to medical staff of burning on the tip of his penis, Bauer prescribed an antibiotic to treat a stage 1 ulcer on Plaintiff's leg and a urinary tract infection (Id. ¶¶ 68, 70); and (4) Bauer conceded that Plaintiff's pain had not been well-controlled on Tramadol and Neurontin and prescribed Narco-5 to Plaintiff from April 15 to April 28, 2010.  (Id. ¶¶ 74-75.)

Plaintiff's allegations against Bauer do not plausibly demonstrate that Bauer was deliberately indifferent to Plaintiff's serious medical needs.

///

31

The FAC shows that every time Bauer saw Plaintiff he provided medical treatment to address Plaintiff's complaints.  The fact that Bauer conceded that Plaintiff's pain had not been well-controlled on Tramadol and Neurotin does not make Bauer deliberately indifferent to Plaintiff's medical needs.  Just because Bauer prescribed a course of medical treatment which later proved to be ineffective cannot even be considered a reliable sign of medical malpractice and surely does not satisfy the much higher standard for deliberate indifference.  Moreover, Plaintiff's own assertion that Bauer recognized the ineffectiveness of the prescribed medications and rectified it by prescribing stronger pain remedies to Plaintiff evidences that Bauer was not deliberately indifferent to Plaintiff's medical needs.

Bauer's "advice" to Plaintiff to reuse catheters similarly does not rise to the level of deliberate indifference.  Although Plaintiff alleges that reusing catheters "increases the risk that supplies are not sterile, further increasing [Plaintiff's] risk of infection," this allegation is not sufficient to plausibly demonstrate that Bauer consciously disregarded an <u>excessive risk</u> to Plaintiff's health or safety.  <u>See</u> <u>Farmer</u>, 511 U.S. at 837.  Further, although Plaintiff alleges that he was provided with less than four catheters per day on a regular basis, nothing in the FAC suggests that Bauer was the medical provider who made a decision as to how many catheters per day Plaintiff should receive.

///

///

1  Accordingly, the Court finds that the FAC's factual
2  allegations are not sufficient to plausibly demonstrate that
3  Bauer was deliberately indifferent to Plaintiff's serious medical
4  needs.  The Court dismisses Defendant Bauer from Plaintiff's
5  first claim with leave to amend.

6

7  *(7) Defendants Ko, Felicano and Austin*

8

9  Plaintiff's allegations against Ko, Felicano and Austin are
10 limited to statements that these Defendants were employed by the
11 County to provide medical treatment to inmates at the Jail, and
12 that they were responsible for providing medical care to
13 Plaintiff. (FAC ¶¶ 19,20.)  The FAC does not contain <u>any</u> facts
14 demonstrating that these Defendants ever treated Plaintiff or
15 even saw his medical record.  Plaintiff has not provided any
16 support for his "bare allegation" that these Defendants were
17 deliberately indifferent to his serious medical needs.
18 Accordingly, the Court dismisses Defendants Ko, Felicano and
19 Austin from Plaintiff's first claim with leave to amend.
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

33

*(8) Defendant Wilson*

Plaintiff makes two factual allegations concerning Wilson:
(1) Wilson was the custody staff responsible for the provision of
care and treatment to Plaintiff and was acting within the scope
of his employment and/or agency with the County (<u>Id.</u> ¶ 21); and
(2) at 1:00 a.m., on the day when Plaintiff was scheduled to go
to the medical unit and when Plaintiff was in severe pain and
with loss of movement in his extremities, Wilson threatened to
"drag" Plaintiff to the medical unit if Plaintiff did not hurry.
(<u>Id.</u> ¶ 71.)  Defendants contend that Plaintiff's allegations
against Wilson are insufficient to state a claim because verbal
harassment does not constitute a constitutional violation.
(Defs.' Reply at 4:22-5:2.)  The Court agrees with Defendants.

A verbal threat does not amount to a constitutional
violation.  <u>See</u>, <u>e.g.</u>, <u>Keenan v. Hall</u>, 83 F.3d 1083, 1092
(9th Cir. 1996) ("[V]erbal harassment generally does not violate
the Eighth Amendment."); <u>Zavala v. Barnik</u>, 545 F. Supp. 2d 1051,
1058 (C.D. Cal. 2008) ("[N]either the Eighth nor the Fourteenth
Amendment provides relief on a civil rights claim for verbal
harassment, including abuse or threats.").  Thus, Plaintiff
cannot state a viable claim against Wilson under § 1983 based
solely on Wilson's verbal threat to "drag" Plaintiff.  As the FAC
is devoid of any other facts demonstrating Wilson's involvement
in Plaintiff's alleged constitutional deprivations, the Court
dismisses Defendant Wilson from Plaintiff's first claim with
leave to amend.

///

III. <u>Sixth Claim for Relief: Violation of the First</u>
     <u>Amendment Against McGinness, Boylan, Sotak, Kroner,</u>
     <u>Felicano, Austin, Ko, Sahba, Bauer and Wilson in Their</u>
     <u>Individual Capacities</u>

Plaintiff alleges that Defendants' acts "were in retaliation for Plaintiff's . . . protest and pending lawsuit complaining of the deplorable conditions under which he and similarly situated inmates were being held" at the Jail, and that he suffered damages as a result of this constitutional deprivation. (FAC ¶¶ 125-26.) The FAC also alleges that the Jail has a history of retaliation against inmates for their requests for medical attention, basic hygiene needs and even food. (<u>Id.</u> ¶ 96.) Defendants contend that Plaintiff failed to address all the elements of the retaliation claim, including what adverse action was taken, that the adverse action chilled Plaintiff's First Amendment rights, and that the adverse action did not serve a legitimate penological purpose. (MTD at 11:12-15.) Defendants further contend that Plaintiff failed to allege any personal involvement as to any of the individual Defendants in the alleged retaliatory actions. (<u>Id.</u> at 11:22-12:3.) The Court finds Defendants' contentions persuasive.

///
///
///
///
///
///

1    A bare allegation of retaliation is insufficient to support

2   a plausible claim for relief.  See Iqbal, 129 S. Ct at 1949-50.

3   In order to state a claim for retaliation, Plaintiff must

4   demonstrate that: (1) the Jail officials took an adverse action

5   against him; (2) the adverse action was taken because Plaintiff

6   engaged in the protected conduct; (3) the adverse action chilled

7   Plaintiff's First Amendment rights; and (4) the adverse action

8   did not serve a legitimate penological purpose, such as

9   preserving institutional order and discipline.  Rhodes v.

10  Robinson, 408 F.3d 559, 568 (9th Cir. 2005); Barnett v. Centoni,

11  31 F.3d 813, 815-16 (9th Cir. 1994).

12   In his opposition, Plaintiff contends that Defendant

13  Wilson's "brutal threat" to "drag" Plaintiff to the medical unit

14  if Plaintiff did not hurry had the intended effect of threatening

15  physical harm in retaliation for Plaintiff's continued complaints

16  and requests for medical attention, and that, as a result,

17  Plaintiff was intimidated and silenced.  (Pl.'s Opp. at

18  22:13-18.)  The Court does not see how a threat to "drag"

19  Plaintiff can plausibly lead to the inference of retaliation for

20  Plaintiff's alleged complaints and a pending lawsuit.  Plaintiff

21  himself acknowledges that the reason for Wilson making the threat

22  was to make Plaintiff "hurry" to the medical unit.  Nothing in

23  the FAC suggests that, in making the threat to "drag" Plaintiff

24  to the medical unit, Wilson had a retaliatory motive.

25   As for other individual Defendants, Plaintiff fails to

26  allege any facts demonstrating that any Defendant took an adverse

27  action against Plaintiff for retaliatory reasons.

28  ///

36

The general allegation that the Jail has a history of retaliation against inmates is not sufficient to state a claim as to individually named Defendants without some further showing that those Defendants personally, or as supervisors, participated in the wrongful conduct.

As another instance of retaliatory action, Plaintiff refers to his inability to eat the food he was served at the Jail because the food conflicted with his religious beliefs. (<u>Id.</u> at 22:18-19.)  However, the FAC does not contain any allegations suggesting that Jail personnel had retaliatory reasons in providing the unsuitable food to Plaintiff.  The FAC is devoid of any facts suggesting that Plaintiff ever complained about the food he was served, or that Jail personnel even knew about Plaintiff's religious beliefs and dietary restrictions.

Accordingly, the Court dismisses Plaintiff's sixth claim against Defendants McGinness, Boylan, Sotak, Kroner, Felicano, Austin, Ko, Sahba, Bauer and Wilson with leave to amend.

///
///
///
///
///
///
///
///
///
///
///

IV.   <u>Second, Third, Fourth, Fifth, and Seventh Claims for</u>
      <u>Relief: Monell Liability against Sacramento County</u>

Plaintiff claims that, at all relevant times, the County
(1) "maintained a policy or a de facto unconstitutional informal
custom or practice of permitting, ignoring and condoning [Jail
personnel] to delay in providing adequate medical assistance for
the protection of the health of inmates, failing to properly
observe and treat inmates" (FAC ¶ 102) (Count 2); (2) "maintained
a policy, custom of practice of under-staffing the Main Jail with
custody and medical personnel" (<u>Id.</u> ¶ 107) (Count 3);
(3) "maintained a policy, custom, or practice of staffing the
Main Jail with personnel who were not sufficiently trained" (<u>Id.</u>
¶ 113) (Count 4); (4) "maintained a policy, custom, or practice
of under staffing the Main Jail with supervisory personnel and
failing to properly supervise the custodial and medical staff at
the Main Jail" (<u>Id.</u> ¶ 119) (Count 5); and (5) "maintained a
policy, custom or practice of retaliating against inmates who
complained about deplorable and unlawful conditions of
confinement at the Main Jail" (<u>Id.</u> ¶ 129) (Count 7).

Plaintiff further alleges that the County was, at all
relevant times, the employer of individual Defendants and was
responsible for the policies, customs and procedures at the Jail.
(<u>Id.</u> ¶¶ 15, 92.)

///
///
///
///

38

County Defendants contend that Plaintiff failed to state <u>Monell</u>
claims because he did not explain how each policy, custom or
practice was deficient; how each policy, custom or practice
caused Plaintiff's harm; and how the deficiency involved was
obvious and the constitutional injury was likely to occur.  (MTD
at 8:22-25; 10:6-12; 12:15-18.)

    In order to be subject to suit under § 1983, the alleged
offender must be a "person" acting under color of state law.
<u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 60 (1989).
Local governments, including counties, qualify as "persons"
within the meaning of § 1983.  <u>Monell v. Dep't of Social Servs.</u>,
436 U.S. 658, 690 (1978); <u>Long v. County of L.A.</u>, 442 F.3d 1178,
1185 (9th Cir. 2006).  However, municipalities and local
governments cannot be vicariously liable for the conduct of their
employees under § 1983, but rather are only "responsible for
their <u>own</u> illegal acts." <u>Connick v. Thompson</u>, 131 S. Ct. 1350,
1359 (2011) (quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479
(1986)) (emphasis in the original).  In other words, a
municipality may only be liable where it individually caused a
constitutional violation via "execution of a government's policy
or custom, whether by its lawmakers or by those whose edicts or
acts may fairly be said to represent official policy." <u>Monell</u>,
436 U.S. at 694; <u>Ulrich v. City & County of S.F.</u>, 308 F.3d 968,
984 (9th Cir. 2002).  A recent decision from this district
summarized the Ninth Circuit standard of municipal liability
under § 1983 in the following way:

///

///

> Municipal liability may be premised on: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate.

Young v. City of Visalia, 687 F. Supp. 2d 1141, 1147 (E.D. Cal. 2009) (citing Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008); Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004); Ulrich, 308 F.3d at 984-85, Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996)).

A "policy," for purposes of municipal liability under § 1983, is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008). A "custom" is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-established as to constitute a custom or usage with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); L.A. Police Protective League v. Gates, 907 F.2d 879, 890 (9th Cir. 1990) (internal quotation marks omitted).

///

///

///

///

///

A negligent policy does not violate the Constitution; rather, in order to amount to "deliberate indifference," the need for more or different action is "obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989); Mortimer v. Baca, 594 F.3d 714, 722 (9th Cir. 2010).  Because Monell held that a local government is not liable under § 1983 on the basis of the doctrine of respondeat superior, "a plaintiff must show the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." Gibson, 290 F.3d at 1186.  Moreover, "[t]o prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." Id. (citing Farmer, 511 U.S. at 841).

Generally, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino, 99 F.3d at 918.  However, in rare circumstances, a court can find a municipality liable under § 1983 based on the so-called "single-incident" theory. Connick, 131 S. Ct. at 1361.  Specifically, a particular "showing of 'obviousness' can substitute for the pattern of violations ordinarily necessary to establish municipal liability." Id. However, the Supreme Court emphasized that it is only "'in a

41

1  narrow range of circumstances' [that] a pattern of similar

2  violations might not be necessary to show deliberate

3  indifference." Id. (quoting Bd. of County Comm'rs of Bryan

4  County v. Brown, 520 U.S. 397, 409 (1997)).

5      Besides demonstrating that one of the methods of

6  establishing municipal liability applies, a plaintiff must also

7  show that the challenged municipal conduct was both the cause in

8  fact and the proximate cause of the constitutional deprivation.

9  Trevino, 99 F.3d at 918.  In other words, Plaintiff bears the

10 burden of demonstrating that the County's policy or custom was a

11 "moving force" of the constitutional deprivation and that

12 Plaintiff's injury would have been avoided had the County had a

13 constitutionally proper policy.  Gibson, 290 F.3d at 1196.

14     A pre-Iqbal Ninth Circuit decision held that "a claim of

15 municipal liability under section 1983 is sufficient to withstand

16 a motion to dismiss even if the claim is based on nothing more

17 than a bare allegation that the individual officers' conduct

18 conformed to official policy, custom, or practice." Whitaker v.

19 Garcetti, 486 F.3d 572, 581 (9th Cir. 2007).  However, the

20 Supreme Court in Iqbal made it clear that conclusory,

21 "threadbare" allegations merely reciting the elements of a cause

22 of action cannot defeat the Rule 12(b)(6) motion to dismiss.

23 Iqbal, 129 S. Ct. at 1949-50.  "In light of Iqbal, it would seem

24 that the prior Ninth Circuit pleading standard for Monell claims

25 (i.e. 'bare allegations') is no longer viable." Young,

26 687 F. Supp. 2d at 1149.

27 ///

28 ///

1   Thus, a <u>Monell</u> claim against the County requires more than

2   "labels and conclusions" or "a formulaic recitation of the

3   elements of a cause of action.'"   <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949

4   (quoting <u>Twombly</u>, 550 U.S. at 555).

5

6        *(1)   Plaintiff's Second Claim for Relief: Policy of Delaying*

7           *Medical Assistance to Inmates and Failure to Properly*

8           *Observe and Treat Inmates*

9

10       Plaintiff alleges that the acts and omissions of individual

11   Defendants in being deliberately indifferent to Plaintiff's

12   serious medical needs and safety were the direct and proximate

13   cause of customs, practices and policies of the County.   (FAC

14   ¶ 101).   Plaintiff claims that the County "maintained a policy or

15   de facto unconstitutional custom or practice of permitting,

16   ignoring and condoning deputies, counselors, officers, doctors,

17   and medical personnel to delay in providing adequate medical

18   assistance for the protection of the health of inmates, failing

19   to properly observe and treat inmates." (<u>Id.</u> ¶ 102.)   Plaintiff

20   goes on to allege that the County maintained the following

21   policies, customs, or practices, which fell below any acceptable

22   standard of care: (1) Failure to provide follow-up care and to

23   monitor inmates with known medical needs; (2) Failure to provide

24   medical care to inmates with serious medical needs;

25   ///

26   ///

27   ///

28   ///

(3) Failure to have medical examinations conducted by qualified medical personnel; (4) Failure to hospitalize inmates with acute medical conditions; (5) Failure to maintain adequate medical records; (6) Failure to provide medical records and a complete medical history to outside hospitals rendering acute care for inmates; (7) Failure of custody staff to conduct proper welfare checks and alert medical to serious medical needs of inmates; and (8) Failure to provide proper psychiatric treatment for suicidal inmates who require catheters.  (Id. ¶ 56.)

Plaintiff relies on two cases pending in this Court, Hewitt v. County of Sacramento, No. 2-07-cv-01037, and Tandel v. County of Sacramento, No. 2-09-cv-00842, in supporting his claim that the County has a custom or policy of failing to provide necessary medical care to inmates in general and to Plaintiff in particular.  (FAC ¶ 104.)  Defendants contend that Plaintiff's Second Claim for Relief consists of a laundry list of potential factual theories and fails to specifically identify a policy, practice, or procedure, or lack thereof, that resulted in the alleged constitutional deprivations.  (Defs.' Reply at 7:1-5.)  The Court finds that Plaintiff has sufficiently stated a Monell claim against the County for having a de facto policy or custom amounting to deliberate indifference to Jail inmates' serious medical needs.  According to Plaintiff, both during his 2007 and 2010 detention at the Jail, numerous Jail employees  repeatedly denied or delayed his medical treatment. (See FAC ¶¶ 31, 33, 37, 54-55, 57, 59, 63-64, 66-69, 72, 81-83.)

///

///

1    This plausibly suggests that the County may have a widespread and

2    established practice of delaying medical assistance to inmates

3    and/or practice of failure to properly observe and treat inmates.

4    Specifically, as alleged, during Plaintiff's 2010 detention, Jail

5    employees knew about Plaintiff's serious neurological disorder

6    and the treatment Plaintiff required but, despite this knowledge,

7    repeatedly failed to provide Plaintiff with adequate pain

8    medication to treat his chronic and severe pain; ignored his

9    requests for treatment and medical supplies on multiple

10   occasions; and ignored the neighboring inmate's requests for

11   medical assistance made on Plaintiff's behalf.  (Id. ¶¶ 54-57,

12   59, 63, 66, 69, 72, 76, 82-83.)  Moreover, as alleged, it took

13   the Jail medical employees "weeks of complaints" to finally

14   acknowledge that Plaintiff was having a recurrence of an NMO

15   attack despite Plaintiff's allegedly obvious symptoms indicating

16   an NMO attack (e.g., headaches, blurry vision, loss of

17   extremities control) and Plaintiff's history of a neurological

18   immune disease. (Id. ¶ 84.)

19        The Court finds these factual allegations sufficient to

20   plausibly demonstrate that the County has a policy or custom of

21   failure to provide timely medical care to inmates with serious

22   medical needs, failure to hospitalize inmates with acute medical

23   conditions, and failure of custody staff to conduct proper

24   welfare checks and alert medical personnel to serious medical

25   needs of inmates.  (See id. ¶ 56).

26   ///

27   ///

28   ///

1    Further, the Court concludes that the FAC provides
2  sufficient facts to plausibly demonstrate that the County has a
3  policy or custom of failure to provide proper psychiatric
4  treatment for suicidal inmates who require catheters.  (See id.)

5    Specifically, as alleged, the psychiatric unit at the Jail
6  was unable to handle patients like Plaintiff who required
7  catheters.  (Id. ¶ 63.)  Because of the Jail's inability to house
8  Plaintiff in the psychiatric unit, medical Defendants Sokolov,
9  Sahba and Sotak allegedly left Plaintiff, who was placed on a
10 suicide watch, "to lay naked, on a mattress on the floor, unable
11 to adequately move, unable to reach the call button, in severe
12 pain, under-medicated, and without adequate supplies or treatment
13 to urinate or defecate cleanly and regularly."  (Id.)  Although
14 Plaintiff's allegations concerning the County's policy of failure
15 to provide proper psychiatric treatment for suicidal inmates who
16 require catheters is based on a single incident, the Court
17 believes that the Plaintiff has made the requisite showing of
18 "obviousness" of the constitutional violation, such that it can
19 be substituted for the pattern of violations ordinarily required
20 to establish municipal liability.  See Connick, 131 S. Ct. at
21 1361.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1    Further, Plaintiff's allegation that the Jail "has a history
2  of failing to respond to the urgent medical needs of its inmates"
3  (FAC ¶ 40) is supported not only by Plaintiff's own experience
4  during two separate instances of detention, which were three
5  years apart, but also by Plaintiff's reference to a different
6  case pending in this court, Hewitt v. County of Sacramento,
7  No.2:07-cv-01037.  Plaintiff alleges that Hewitt demonstrates
8  that the County has a custom and policy of failing to provide
9  necessary medical care to inmates.  Thus, Plaintiff has plausibly
10 demonstrated the "practices of sufficient duration, frequency and
11 consistency" to state a viable Monell claim against the County.
12 See Trevino, 99 F.3d at 918.

13    In sum, the Court concludes that, at this point in the
14 litigation, without substantial discovery, and where the Court
15 must draw all inferences in favor of Plaintiff, the FAC contains
16 sufficient allegations for the Court to infer that the County
17 plausibly has a policy or custom of delaying medical assistance
18 to inmates and failure to properly observe and treat inmates.
19 Accordingly, the Court declines Defendants' motion to dismiss
20 Plaintiff's second claim for relief.

21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

> (2)  *Plaintiff's Fourth Claim for Relief: Failure to*
> *Adequately Train*

Plaintiff alleges the County maintained a policy, custom, or practice of staffing the Jail with personnel who were not sufficiently trained, and that such a policy, custom or practice was the moving force behind the violation of his constitutional rights.  (FAC ¶¶ 113-14.)  It appears that Plaintiff's fourth claim is limited to the County's failure to train custody personnel and does not implicate the medical personnel at the Jail.  (See id. ¶¶ 114-15.)  Specifically, Plaintiff alleges that the County "failed to properly train custody personnel, including but not limited to training and monitoring inmates, detecting the need for medical care, responding to requests for medical care, proper policies and procedures for transportation of acute inmates to appropriate medical facilities, maintaining constitutional[ly] adequate medical charts and histories, ensuring that inmates requiring acute medical care are accompanied to the treating facility with a complete medical history, and providing necessary medical care to inmates with serious medical needs."  (Id. ¶ 115.)

A municipality's failure to train its employees may create a § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact."  City of Canton, 489 U.S. at 388; Lee, 250 F.3d at 681.  "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent the municipal policy."

Long, 442 F.3d at 1186.  A plaintiff alleging a failure to train must show that "(1) he was deprived of a constitutional right, (2) the [municipality] had a training policy that 'amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its employees] are likely to come into contact'; and (3) his constitutional injury would have been avoided had the [municipality] properly trained those officers." Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought as a . . . 'policy or custom' that is actionable under § 1983."  City of Canton, 489 U.S. at 389; Long, 511 F.3d at 907. A municipality is "deliberately indifferent" when the need for more or different action, "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." City of Canton, 489 U.S. at 390; Lee, 250 F.3d at 682.  "Unlike the deliberate indifference standard used to determine if a violation of a detainee's right to receive medical care took place, th[e] standard [for failure to train] does not contain a subjective component." Gibson, 290 F.3d at 1195 (citing Farmer, 511 U.S. at 841) (emphasis added).  "As a result, there is no need for [the plaintiff] to prove that the County policymakers actually knew that their omissions would likely result in a constitutional violation." Id.

///

For example,"[a] 'pattern of tortious conduct,' despite the existence of a training program, or 'highly predictable' constitutional violations due to a 'failure to equip law enforcement officers with specific tools to handle situations,' are circumstances in which liability for failure to train may be imposed." <u>Young</u>, 687 F. Supp. 2d at 1148 (citing <u>Board of County Comm'rs</u>, 520 U.S. at 407-10; <u>Long</u>, 442 F.3d at 1186-87).

Generally, "[e]vidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy." <u>Blankenhorn</u>, 485 F.3d at 484.  "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability of the [municipality], for the officer's shortcomings may have resulted from factors other than a faulty training program." <u>City of Canton</u>, 489 U.S. at 390-91. Moreover, "adequately trained officers may occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." <u>Id.</u> at 391.  Accordingly, "absent evidence of a 'program-wide inadequacy in training,' any shortfall in a single officer's training 'can only be classified as negligence on the part of the municipal defendant – a much lower standard of fault than deliberate indifference.'" <u>Blankenhorn</u>, 485 F.3d at 484-85 (quoting <u>Alexander v. City & County of S.F.</u>, 29 F.3d 1355, 1367 (9th Cir. 1994)).  However, the Supreme Court recently affirmed the validity of the so-called "single-incident" theory in failure to train cases.  <u>Connick</u>, 131 S. Ct. at 1360.

///

///

1   As this Court discussed earlier, in "a narrow range of
2   circumstances," a particular "showing of 'obviousness' can
3   substitute for the pattern of violations ordinarily necessary to
4   establish municipal liability." Id. at 1361.

5       Plaintiff has made sufficient factual allegations to
6   demonstrate that the actions of some unnamed custodial defendants
7   plausibly support the inference that the County failed to train
8   those employees adequately.  In particular, Plaintiff alleges:
9   (1) Plaintiff attempted to use the "call button" on multiple
10  occasions to request treatment and supplies but was ignored, (FAC
11  ¶ 55); (2) The occupant of the cell next to Plaintiff's used the
12  "call button" on many occasions to request help for Plaintiff but
13  was also ignored (FAC ¶¶ 55,69); and (3) unnamed custodial
14  officers routinely prevented Plaintiff's medical visits and did
15  not provide Plaintiff with access to medical treatment (Id. ¶ 66,
16  72).  The Court finds these factual allegations sufficient to
17  state a plausible claim for the County's failure to train its
18  custodial personnel in "monitoring inmates," "detecting the need
19  for medical care," and "responding to requests for medical care."
20  (See id. ¶ 115.)

21      Accordingly, the Court finds that Plaintiff sufficiently
22  alleged what County's training practices were inadequate and how
23  those practices caused Plaintiff's harm.  See Young,
24  687 F. Supp. 2d at 1149.  The Court declines to dismiss
25  Plaintiff's fourth claim for relief against the County for
26  failure to adequately train.[6]

27      _____
        [6] However, the Court notes that some of the theories of
    liability asserted by Plaintiff in the Fourth claim for relief
28                                              (continued...)

51

*(3)  Plaintiff's Third and Fifth Claim for Relief: Failure to Adequately Staff and Failure to Supervise*

The Court considers the Third and Fifth claims for relief together because Plaintiff's allegations to support these claims substantially overlap.  Plaintiff claims that the County maintained the policy, custom or practice of under-staffing the Jail with custody and medical personnel (FAC ¶ 107) under-staffing the Jail with supervisory personnel and failing to properly supervise the custodial and medical staff at the Jail (Id. ¶ 119).  Plaintiff claims that those policies were "the moving force" behind the violation of his constitutional rights. (FAC ¶¶ 108,120.)  Plaintiff further alleges that if the "Jail had been adequately staffed he would have received more adequate supervision and medical care."  (Id. ¶ 109.)

Plaintiff also alleges that Defendants failed to supervise Jail personnel to ensure the monitoring of inmates, detecting the need for medical care, responding to requests for medical care and ensuring that inmates in need of medical care receive such care.  (Id. ¶ 121.)

///

///

---

[6](...continued) are not supported by any factual allegations in the FAC. Specifically, the Court refers to Plaintiff's claim that the County failed to train its custody personnel in ensuring that inmates requiring acute medical care are accompanied to the treating facility with a complete medical history.  (FAC ¶ 115.) While Plaintiff's Second Amended Complaint in Case No. 2:09-cv-0842 contained facts demonstrating the plausibility of this particular theory of Monell liability for failure to train, the FAC in the present case is devoid of any such facts.

Finally, Plaintiff claims that the Jail "has operated for a number of years without sufficient staffing of properly trained and supervised custody and medical personnel." (Id. ¶ 40.)

"In order to comply with their duty not to engage in acts evidencing deliberate indifference to inmates' medical . . . needs, jails must provide . . . staff who are 'competent to deal with prisoners' problems.'" Gibson, 290 F.3d at 1187(citing Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982)). However, to demonstrate that the County had a policy or custom of under-staffing and failure to supervise, Plaintiff must provide "more than labels and conclusions." See Twombly, 550 U.S. at 555. Yet, Plaintiff's allegations about the County's policy of under-staffing and failure to adequately supervise amount to just that -- legal conclusions which are not entitled to be taken as true and are not sufficient to support Plaintiff's claims for relief. The allegation regarding the Jail's history of under-staffing is a conclusory statement not supported by any evidence in the FAC. The FAC does not contain any factual allegations that the Jail did not have enough medical, custody or supervisory personnel to provide adequate medical care to Plaintiff. The gravamen of Plaintiff's allegations is the inadequacy of medical care that he received while detained at the Jail, not the under-staffing of the Jail.

///
///
///
///
///

Nor does the FAC contain any factual allegations allowing the Court to infer that either the County's lawmakers or "those whose edicts or acts may fairly be said to represent" the County's official policy created or endorsed the policy of under-staffing of the Jail with medical, custody or supervisory personnel. See Monell, 436 U.S. at 694; Ulrich v. City & County of S.F., 308 F.3d 968, 984 (9th Cir. 2002). Accordingly, Plaintiff's Third and Fifth claims for relief against the County are dismissed with leave to amend.

> (4) *Plaintiff's Seventh Claim for Relief: Policy of*
> *Retaliating Against Inmates for Protesting*
> *Unconstitutional and Unlawful Jail Conditions*

Plaintiff alleges that the County maintained a policy, custom or practice of retaliating against inmates who complained about deplorable and unlawful conditions of confinement at the Jail, that the policy was the "moving force" behind the violation of Plaintiff's constitutional rights, that Defendants knew or should have known that the policy would cause grievous injury to Plaintiff, and that Plaintiff suffered injury as a proximate result of the alleged policy, custom or practice. (FAC ¶¶ 129-32.) Plaintiff also alleges that the Jail has "a history of retaliation against inmates for their requests for medical attention, basic hygiene needs, or even food." (Id. ¶ 96.)

///

///

///

54

Labeling an action "retaliatory," without more, is a legal conclusion, which is not sufficient to state a cognizable claim. Iqbal, 129 S. Ct. at 1949.  The SAC is devoid of any evidence of the alleged "history of retaliation."  Moreover, the SAC lacks any factual allegations demonstrating that the County, by its own actions or by the actions of its officials, maintained an official or de facto policy of retaliating against inmates for protesting unconstitutional and unlawful jail conditions. Accordingly, Plaintiff's seventh claim for relief against the County is dismissed with leave to amend.

> V.    Eighth Claim for Relief: Violation of the Americans
>       with Disabilities Act and Rehabilitation Act against
>       the County and McGinness, Boylan, Sotak, Kroner,
>       Felicano, Austin, Ko, Sahba, Bauer and Wilson in Their
>       Individual Capacities

*(1) ADA and RA Claims Against the County*

Plaintiff alleges that Plaintiff was a qualified individual under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").  (FAC ¶ 134.)  Plaintiff further alleges that the County violated the ADA and RA by: (1) creating and maintaining a jail without sufficient staffing levels to provide responsible care to disabled persons in need; and

///

///

///

(2) failing to provide wheelchairs or other types of accommodations to those people suffering from the inability to ambulate, thereby providing a lesser quality of care and service that is different, separate, and worse than the service provided to other individuals. (Id. ¶ 141.) Plaintiff claims that, because of his disability, he was denied the benefits of the services, programs, and activities of the County, mental care, treatment, follow-up and supervision. (Id. ¶ 143.) Plaintiff specifically alleges that, because he required catheters, he was housed differently and was not allowed to utilize the psychiatric unit where suicidal patients who do not require catheters are placed. (Id.) Plaintiff alleges that, as a result of Defendants' discriminatory conduct, he suffered, is now suffering and will continue to suffer damages and injuries. (Id. ¶ 144.)

"When a plaintiff brings a direct suit under either the [RA] or Title II of the ADA against a municipality (including a county), the public entity is liable for the vicarious acts of its employees." Duvall v. County of Kitsap, 260 F.3d 1124, 1141 (9th Cir. 2001). To establish a violation of § 504 of the RA, Plaintiff must show that (1) he is handicapped within the meaning of the RA; (2) he is otherwise qualified for the benefit or services sought; (3) he was denied the benefit or services solely by reason of his handicap; and (4) the program providing the benefit or services receives federal financial assistance. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

///

///

///

To establish a violation of Title II of the ADA, Plaintiff must show that (1) he is a qualified individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (4) such exclusion or discrimination was by reason of his disability.  O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1060 (9th Cir. 2007).  "The ADA's broad language brings within its scope 'anything a public entity does,'" including "programs or services provided at jails, prisons, and any other 'custodial and correctional institution.'"  Lee, 250 F.3d at 691(quoting Yeskey v. Pennsylvania Dep't of Corr., 118 F.3d 168, 171 & n.5 (3d Cir. 1997)).

County Defendants do not dispute that Plaintiff was a "qualified individual with a disability."  However, County Defendants contend that Plaintiff's allegations of being denied access to medical care and mental health care and being provided a lesser quality of care raise "nothing more than [a claim] of inadequate medical treatment for his disability, which is insufficient to state a claim under the ADA."  (MTD at 14:1-4.) Defendants further contend that Plaintiff failed to provide facts demonstrating that he would have been entitled to any specific benefit or service and failed to show that he is entitled to relief.  (Id. at 14:5-7.)  The Court finds Defendants' arguments unpersuasive.

///

1    Defendants are correct in alleging that the inadequate

2 treatment or lack of medical treatment for Plaintiff's medical

3 conditions does not provide a basis for a liability under the ADA

4 or RA.  See, e.g., Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir.

5 1996)("The ADA does not create a remedy for medical

6 malpractice."); Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir.

7 2005) (medical treatment decisions are not a basis for ADA or RA

8 claims); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144

9 (10th Cir. 2005) (concluding that medical decisions are not

10 ordinarily within the scope of the ADA); Luna v. Cal. Health Care

11 Servs., No. 1:10-CV-02076, 2011 WL 6936399, at *5 (E.D. Cal.

12 2011) ("Plaintiff's allegations of inadequate medical care do not

13 state a claim under the ADA.").  The Ninth Circuit has also

14 explained, in an unpublished opinion, that "[i]nadequate medical

15 care does not provide a basis for an ADA claim unless medical

16 services are withheld *by a reason of* a disability." Marlor v.

17 Madison County Idaho, 50 Fed. Appx. 872, 873 (9th Cir. 2002)

18 (emphasis in the original).

19    The Court finds that Plaintiff's eighth claim goes beyond

20 allegations of general inadequacy of medical treatment provided

21 to him at the Jail.  Plaintiff explicitly alleges that, because

22 of his disability, he was not allowed to utilize the psychiatric

23 unit where suicidal patients who do not require catheters are

24 placed.  (FAC ¶ 143.)  The psychiatric unit was allegedly unable

25 to handle patients who required catheters.  (Id. ¶ 63.)

26 ///

27 ///

28 ///

Thus, Plaintiff has sufficiently demonstrated that, <u>solely by a reason of his disability</u>, he was excluded from receiving the benefits of services ordinarily provided by the Jail's psychiatric unit. <u>See</u> <u>Marlor</u>, 50 Fed. Appx. at 873.  Plaintiff has also sufficiently demonstrated that he was otherwise qualified to receive the benefit of services provided by the Jail's psychiatric unit by alleging that he was placed on suicide watch. (<u>Id.</u> ¶ 60.)  Thus, Plaintiff's ADA and RA claim alleges more than the County's failure to attend to inmates' medical needs.  Plaintiff makes specific allegations that he was excluded from receiving benefits of a particular Jail service solely by a reason of his disability.

Accordingly, the Court denies Defendants' motion to dismiss the County from Plaintiff's eighth claim for relief.

> (2)  *ADA and RA Claims Against McGinness, Boylan, Sotak,*
> *Kroner, Felicano, Austin, Ko, Sahba, Bauer and Wilson*

Defendants contend that Plaintiff's eighth claim should be dismissed against individual Defendants because there is no individual liability under the ADA. (MTD at 14:8-12.) In his opposition, Plaintiff failed to address Defendants' contentions. The Court finds Defendants' arguments persuasive.

///
///
///
///
///

59

1    There is no individual liability under the ADA and RA.  <u>See</u>,

2  <u>e.g.</u>, <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1146 (9th Cir. 2002) ("[A]

3  plaintiff cannot bring an action under 42 U.S.C. § 1983 against a

4  State official in his or her individual capacity to vindicate

5  rights created by Title II of the ADA or section 504 of the

6  [RA]."); <u>Burgess v. Carmichael</u>, 37 Fed. Appx. 288, 292 (9th Cir.

7  2002) ("Plaintiffs may sue only "public entity" for [the ADA]

8  violations, not government officials in their individual

9  capacity."); <u>Walker v. Snyder</u>, 213 F.3d 344, 346 (7th Cir. 2000)

10  (there is no personal liability under Title II of ADA);

11  <u>Fresquez v. Moerdyk</u>, No. 1:04-cv-05123, 2011 WL 2433290, at *5

12  (E.D. Cal. June 13, 2011) ("[A]ny claim Plaintiff might intend to

13  make under the ADA or RA against defendants as individuals, is

14  not cognizable.  To be cognizable, an ADA claim must be brought

15  for discrimination by a 'public entity.'").  Accordingly,

16  Plaintiff's eighth claim against McGinness, Boylan, Sotak,

17  Kroner, Felicano, Austin, Ko, Sahba, Bauer and Wilson in their

18  individual capacities is dismissed.  Since the defect cannot be

19  cured by amendment, Plaintiff is not given leave to amend.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

VI.  <u>Ninth Claim for Relief: Claim under California Civil
     Code § 52.1 Against the County, McGinness, Boylan,
     Sotak, Kroner, Felicano, Austin, Ko, Sahba, Bauer and
     Wilson</u>

Plaintiff alleges that, as a result of Defendants' conduct
in violation of the First and Fourteenth Amendments, Plaintiff
suffered damages, including actual damages within the meaning of
California Civil Code § 52.  (FAC ¶¶ 146-47.)  Plaintiff further
claims that he is entitled to an award of exemplary damages,
civil penalties, and attorneys' fees pursuant to California Civil
Code § 52.  (<u>Id.</u> ¶ 148.)  County Defendants contend that
Plaintiff's "bare allegation of a constitutional violation is
insufficient to state a claim for § 52.1 violation."  (MTD at
15:4-6.)  Moreover, Defendants argue, Plaintiff failed to
separately plead facts against each Defendant but grouped all
Defendants together.  (MTD at 15:6-7.)

In his opposition, Plaintiff argues that Defendant Wilson's
threat to drag Plaintiff if he did not hurry exhibits the threats
and intimidation that resulted in Plaintiff's belief that he
would be physically or emotionally harmed by the guards if he
continued to request medical attention.  (Pl.'s Opp. at 26:5-7.)
County Defendants respond that: (1) As to Wilson, Plaintiff fails
to allege which constitutional right Wilson interfered with, how
Plaintiff was harmed by Wilson's threats, and how Wilson's
conduct was a substantial factor in causing Plaintiff's harm; and
///
///

61

(2) Besides Wilson, Plaintiff does not address any of the other Defendants.  (Defs.' Reply at 9:16-23.)   The Court agrees with Defendants.

California Civil Code § 52.1 provides Plaintiff with a right to sue a person or persons, whether or not acting under a color of law, who interfere by threats, intimidation, or coercion, or attempt to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by Plaintiff of rights secured by the U.S. Constitution, or of the rights secured by the Constitution or laws of California.   The California Supreme Court explained that § 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion."  <u>Jones v. Kmart Corp.</u>, 17 Cal. 4th 329, 334 (1998). "The essence of [§ 52.1 ] is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." <u>Fenters v. Yosemite Chevron</u>, 761 F. Supp. 2d 957, 996 (E.D. Cal. 2010) (citing <u>Austin B. v. Escondido Union School Dist.</u>, 149 Cal. App. 4th 860, 883 (Ct. App. 2007)).

Plaintiff's factual allegations do not plausibly demonstrate that Wilson, by threatening to "drag" Plaintiff to the medical unit, either tried to or did prevent Plaintiff from doing something that Plaintiff had the right to do under the law.

///

///

///

Plaintiff's argument that Wilson's threat resulted in Plaintiff's belief that he would be physically or emotionally harmed by the guards if he continued to request medical attention is unavailing.   Plaintiff himself states that the reason Wilson threatened to "drag" Plaintiff was to make Plaintiff "hurry" to the medical unit.   (FAC ¶ 71.)   The Court does not see how Wilson's attempt to make Plaintiff "hurry" to his medical appointment, albeit rude and disrespectful, could make Plaintiff reasonably believe that he would be harmed if he continued to seek medical attention.   The very motivation behind Wilson's alleged threat, after all, was to provide medical care to Plaintiff.

As to other Defendants, the FAC lacks any factual allegations demonstrating that any other Defendant used "threats, intimidation or coercion" to interfere with the exercise of Plaintiff's constitutional rights.   Accordingly, the Court dismisses Plaintiff's ninth claim for relief against the County, McGinness, Boylan, Sotak, Kroner, Felicano, Austin, Ko, Sahba, Bauer and Wilson with leave to amend.

///
///
///
///
///
///
///
///
///

VII.  <u>Tenth Claim for Relief: Claim under California</u>
      <u>Government Code § 845.6 Against the County, McGinness,</u>
      <u>Boylan, Sotak, Kroner, Felicano, Austin, Ko, Sahba,</u>
      <u>Bauer and Wilson</u>

(1)  Section 845.6 Claim Against the County

Plaintiff alleges that, pursuant to California Government
Code § 845.6, Defendants had a duty to monitor, check, and
respond to persons under their custody, supervision and control.
(FAC ¶ 150.)  Defendants allegedly knew or had reason to know
that Plaintiff was in need of immediate medical care, and ongoing
follow-up medical care, and failed to take reasonable action to
procure such medical care. (<u>Id.</u> ¶ 151.)  Plaintiff alleges that
he suffered damages as a result of Defendants' breach of the duty
to summon medical care to Plaintiff. (<u>Id.</u> ¶ 152.)  County
Defendants contend that, since § 845.6 does not impose a duty to
monitor the quality of care provided, Plaintiff has not stated a
claim against Defendants. (MTD at 15:26-27.)  Plaintiff
considers Defendants' argument to be "incoherent" and asks the
Court to disregard it. (Pl.'s Opp. at 26:20-21.)

Section 845.6 provides: "[A] public employee, and the public
entity, where the employee is acting within the scope of his
employment, is liable if the employee knows or has reason to know
that the prisoner is in need of immediate care and he fails to
take reasonable action to summon such medical care."

///

///

64

Thus, under the express statutory language, the County can be liable for the actions of its employees when such employees were acting within the scope of their employment.

In order to state a claim under § 845.6, Plaintiff "must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to summon such care." <u>Jett</u>, 439 F.3d at 1099. Liability under § 845.6 is limited to "serious and obvious medical conditions requiring immediate care." <u>Lawson v. Superior Court</u>, 180 Cal. App. 4th 1372, 1385 (Ct. App. 2010). Defendants are correct that § 845.6 does not impose a duty to monitor the quality of care provided to inmates on Jail employees. <u>See Jett</u>, 439 F.3d at 1099 (citing <u>Watson v. State</u>, 21 Cal. App. 4th 836, 843 (Ct. App. 1993)). However, Plaintiff's ninth claim is not limited to allegations that the County and its employees failed to monitor his medical condition. Plaintiff also alleges that Defendants failed to "respond" to his medical needs when they "knew or had reason to know that Plaintiff was in need of immediate medical care." (FAC ¶¶ 150-51.) The Court finds that Plaintiff has stated a viable claim under Cal. Gov't Code § 845.6 against the County.

First, the FAC demonstrates, and Defendants do not dispute, that Plaintiff was plausibly suffering from a serious and obvious medical condition that required immediate attention. Next, the FAC provides sufficient facts for the Court to plausibly infer that some custodial officers at the Jail failed to take reasonable action to summon medical care for Plaintiff.

///

Specifically, as alleged, Plaintiff used the "call button" on
multiple occasions to request medical treatment and supplies, but
was ignored (Id. ¶ 55); Plaintiff was denied adequate and timely
suppositories and pads, which he allegedly required for his
medical condition (Id. ¶ 59); custody officers routinely
prevented Plaintiff's access to medical care when Plaintiff
developed bed sores (Id. ¶ 66); Plaintiff was left without
adequate medical treatment for a few weeks despite his complaints
about severe pain and burning on the tip of his penis (Id. ¶ 68).
These facts, compounded with Plaintiff's allegation that the
custody personnel knew about Plaintiff's serious neurologic
immune disorder and the treatment Plaintiff required, allow the
Court to infer that the County can be plausibly liable under Cal.
Gov't Code § 845.6 for the failure of the custodial officers at
the Jail to summon medical care for Plaintiff.

Accordingly, the Court denies Defendants' motion to dismiss
the County from Plaintiff's tenth claim for relief.


*(2)   Section 845.6 Claims Against McGinness, Boylan, Sotak,*
        *Kroner, Felicano, Austin, Ko, Sahba, Bauer and Wilson*


Defendants argue that Plaintiff cannot state a § 845.6 claim
without pleading each Defendant's involvement.  (MTD at 16:1-3.)
Plaintiff responds that Defendants ignore each specific
allegations in the body of the complaint and the incorporation by
reference of each of those allegations into each successive cause
of action.  (Pl.'s Opp. at 26:22-26.)
///

In order to state a claim against individual Defendants, Plaintiff should plausibly demonstrate how each Defendant knew that Plaintiff was in need of immediate care and failed to take reasonable action to summon such medical care.  The Court agrees with Defendants that, in order to defend the claim, each Defendant has a right to know what the allegations are against him or her individually.  (See Defs.' Reply at 10:8-9.)  The FAC does not contain any facts to demonstrate plausibly that any individual Defendants failed to summon medical care to Plaintiff. As discussed earlier in this Memorandum and Order, Plaintiff failed to plausibly demonstrate that McGinness, Boylan, Austin, Felicano and Ko personally participated in any of the alleged wrongful acts.  As to Sotak, Kroner, Sahba and Bauer, all of whom are medical providers, the FAC's specific allegations are not that these Defendants failed to "summon" medical care to Plaintiff, but that the care they provided was not adequate. Section § 845.6 does not provide a remedy for such a violation. See Watson v. California, 21 Cal. App. 4th 836, 843 (Ct. App. 1993) (to be actionable under § 845.6, defendants' failure should be "tantamount to no medical care"; "misdiagnosis" does not trigger liability under § 845.6); Nelson v. California, 139 Cal. App. 3d 72, 80-81 (Ct. App. 1982) (failure to prescribe or provide the correct medical treatment is not equivalent to failure to summon medical care under § 845.6); Kraft v. Laney, No. CIV S-04-0129, 2005 WL 2042310, at *11(E.D. Cal. Aug. 24, 2005) ("[T]he duty [under § 845.6] is limited to summoning immediate medical care.  It does not encompass a duty to provide reasonable or appropriate care.").

67

1    The FAC does not allege a single incident where Sotak,
2  Kroner, Sahba, and Bauer refused to see Plaintiff when he
3  required immediate medical attention.  On the contrary, Plaintiff
4  himself alleges that these Defendants saw Plaintiff, evaluated
5  him and prescribed treatment, albeit inadequate.  Thus, the FAC
6  fails to plausibly demonstrate that the actions of medical
7  Defendants were "tantamount to no medical care."  See Watson,
8  21 Cal. App. 4th at 843.  Even assuming that the treatment
9  provided was negligent or even grossly inadequate, by providing
10 the treatment, medical Defendants satisfied their duty to
11 "summon" medical care within the meaning of § 845.6.

12    As to Wilson, the FAC also is devoid of any facts
13 demonstrating that Wilson failed to summon medical care to
14 Plaintiff.  On the contrary, Plaintiff explicitly alleges that
15 Wilson threatened to "drag" him and, in fact, took Plaintiff to
16 the medical unit.  (FAC ¶ 71.)  This allegation demonstrates that
17 Wilson, contrary to Plaintiff's allegations, summoned medical
18 care for Plaintiff.

19    Accordingly, the Court grants Defendants' motion to dismiss
20 Defendants McGinness, Boylan, Sotak, Austin, Felicano, Kroner,
21 Sahba, Bauer, Ko and Wilson from Plaintiff's tenth claim with
22 leave to amend.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

VIII.     Eleventh Claim for Relief: Negligence against
          McGinness, Boylan, Sotak, Kroner, Felicano,
          Austin, Ko, Sahba, Bauer and Wilson

Plaintiff alleges that Defendants "negligently, carelessly and unskillfully cared for, attended to, handled, controlled and failed to supervise, monitor and attend to [Plaintiff] and/or failed to refer him to medical care providers, negligently failed to provide physician's care and carelessly failed to detect and monitor his condition, and negligently, carelessly and unskillfully failed to possess and exercise the degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants." (FAC ¶ 154.)  According to Plaintiff, Defendants also failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing and to timely refer Plaintiff for medical and/or hospital care. (Id.) Plaintiff further alleges that the supervisory defendants failed to conduct appropriate investigatory procedures to determine the need to obtain medical care for Plaintiff and failed to have proper investigation and reports of allegations of subordinates' wrongful conduct. (Id. ¶ 155.)

According to Plaintiff, Defendants knew or had reason to know that Plaintiff was in need of immediate medical care, and on-going follow-up medical care, and failed to take reasonable action to procure such medical care. (Id. ¶ 156.)  As a result, Plaintiff allegedly suffered damages. (Id. ¶ 157.)

///

69

1    Defendants argue that Plaintiff's eleventh claim should be
2    dismissed because Plaintiff failed to plead specific facts as to
3    how each Defendant's conduct was negligent.  (MTD at 16:25-27.)
4    Plaintiff responds that Defendants "wholly ignore allegations
5    included in the body of the complaint and the incorporation by
6    reference of each of those allegations into the [eleventh] cause
7    of action."  (Pl.'s Opp. at 27:13-15.)  The Court finds
8    Plaintiff's contention well-taken.  In reviewing the sufficiency
9    of the complaint under Rule 12(b)(6), the Court must assume that
10   "general allegations embrace those specific facts that are
11   necessary to support a claim."  Smith, 358 F.3d at 1106.  Also,
12   in deciding whether a complaint survives a Rule 12(b)(6) motion
13   to dismiss, the Court takes into consideration not only specific
14   factual allegations but also "reasonable inferences" from the
15   complaint's "factual content."  Moss v. United States Secret
16   Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The Court finds that,
17   based on the general and specific factual allegations in the FAC
18   and reasonable inferences, it is plausible that Defendants Sotak,
19   Kroner, Bauer and Sahba breached their duty of care to Plaintiff,
20   and that Plaintiff suffered harm as a result of such breach.

21   However, the Court finds the FAC's general and specific
22   allegations insufficient to state a claim of negligence against
23   Defendants McGinness, Boylan, Felicano, Austin, Ko and Wilson.
24   The FAC does not allege that McGinness, Boylan, Austin or Ko ever
25   had any personal contact with Plaintiff.
26   ///
27   ///
28   ///

Plaintiff's conclusory allegations that each of these Defendants caused and is responsible for the unlawful conduct and the resulting harm is not sufficient to plausibly demonstrate how each Defendant breached their duty to Plaintiff.  Such general allegations are inadequate to give these Defendants "a fair notice" of the grounds upon which the claim against them rests. See Twombly, 550 U.S. at 555.

As to Wilson, the FAC's only relevant factual allegation that Wilson threatened to "drag" Plaintiff to the medical unit if Plaintiff did not hurry is not sufficient to state a claim for negligence.  The Court cannot plausibly infer what duty Wilson breached and what harm Plaintiff suffered as a result of any alleged breach.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's eleventh claim for relief as to Defendants McGinness, Boylan, Felicano, Austin, Ko, and Wilson with leave to amend, and denies Defendants motion as to Defendants Sotak, Kroner, Bauer and Sahba.

**CONCLUSION**

For the reasons stated above, County Defendants' motion is granted in part and denied in part, consistent with the foregoing, as follows:

///

///

///

///

71

1    1.   County Defendants' motion to dismiss from the FAC

2 individual Defendants McGinness, Boylan, Sotak, Kroner, Felicano,

3 Austin, Ko, Sahba, Bauer and Wilson, when alleged to be acting in

4 their official capacities, is GRANTED with leave to amend.

5    2. County Defendants' motion to dismiss Plaintiff's First

6 Claim under § 1983 for failure to provide adequate medical care

7 is GRANTED with leave to amend as to the County, McGinness,

8 Boylan, Kroner, Felicano, Austin, Ko, Bauer and Wilson, and

9 DENIED as to Sotak and Sahba.

10    3.   County Defendants' motion to dismiss the County from

11 Plaintiff's Second and Fourth <u>Monell</u> Claims under § 1983 is

12 DENIED.

13    4.   County Defendants' motion to dismiss the County from

14 Plaintiff's Third, Fifth and Seventh <u>Monell</u> Claims is GRANTED

15 with leave to amend.

16    5.   County Defendants' motion to dismiss Plaintiff's Eighth

17 Claim under the ADA and RA is DENIED as to the County, and

18 GRANTED without leave to amend as to McGinness, Boylan, Sotak,

19 Kroner, Felicano, Austin, Ko, Sahba, Bauer and Wilson in their

20 individual capacities.

21    6.   County Defendants' motion to dismiss Plaintiff's Ninth

22 Claim under California Civil Code § 52.1 is GRANTED with leave to

23 amend as to the County, McGinness, Boylan, Sotak, Kroner,

24 Felicano, Austin, Ko, Sahba, Bauer and Wilson.

25 ///

26 ///

27 ///

28 ///

1    7.   County Defendants' motion to dismiss Plaintiff's Tenth

2  Claim under California Government Code § 845.6 is DENIED as to

3  the County, and GRANTED with leave to amend as to McGinness,

4  Boylan, Sotak, Kroner, Felicano, Austin, Ko, Sahba, Bauer and

5  Wilson.

6    8.   County Defendants' motion to dismiss Plaintiff's

7  eleventh claim for negligence is DENIED as to Sotak, Kroner,

8  Sahba, and Bauer, and GRANTED with leave to amend as to the

9  County, McGinness, Boylan, Felicano, Austin, Ko and Wilson.

10 Any amended pleading consistent with the terms of this Memorandum

11 and Order must be filed not later than twenty (20) days following

12 the date the Memorandum and Order is filed.

13    IT IS SO ORDERED.

14
   Dated: February 22, 2012
15

16

17                              MORRISON C. ENGLAND, JR.
                                UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

25

26

27

28