UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SANDIPKUMAR TANDEL,                    No. 2:11-cv-00353-MCE-GGH
                                       [Consolidated with case
          Plaintiff,                   No. 2:09-cv-00842-MCE-GGH)

     v.                                <u>MEMORANDUM AND ORDER</u>

COUNTY OF SACRAMENTO, et al.,

          Defendants.

                         ----oo0oo----


     Plaintiff Sandipkumar Tandel ("Plaintiff") seeks redress for
several federal and state law claims against various named
Defendants, including the County of Sacramento ("County"),
Sheriff of Sacramento County, John McGinness ("McGinness"),
Undersheriff and Jail Captain Michael Iwasa ("Iwasa"), Chief of
Sacramento County Jail Correctional Health Services Ann Marie
Boylan ("Boylan"), Interim Medical Director of Sacramento County
Jail Correctional Health Services Asa Hambly, M.D. ("Hambly"),
Medical Director of Sacramento County Jail Michael Sotak, M.D.
("Sotak"), Director of Nursing Shelly Jordan ("Jordan"), Susan
Kroner, R.N. ("Kroner"), Agnes R. Felicano, N.P. ("Felicano"),

1

1   James Austin, N.P. ("Austin"), Richard L. Bauer, M.D. ("Bauer"),

2   Gregory Sokolov, M.D. ("Sokolov"), Keelin Garvey, M.D.

3   ("Garvey"), Glayol Sahba, M.D. ("Sahba"), Chris Smith, M.D.

4   ("Smith"), Hank Carl, R.N. ("Carl"), Sergeant Tracie Keillor

5   ("Keillor"), Deputy Pablito Gaddis ("Gaddis"), Deputy John Wilson

6   ("Wilson"), Deputy Jacoby ("Jacoby"), and Deputy Medeiros

7   ("Medeiros").  Plaintiff alleges that Defendants' conduct

8   violated his civil rights during Plaintiff's detentions at the

9   Sacramento County Main Jail from February 7, 2007 to May 20, 2007

10  and from March 23, 2010 to May 10, 2010.  Plaintiff further

11  alleges a claim under the Americans with Disabilities Act, as

12  well as state common law claims, as a result of the treatment he

13  received during the two aforementioned incarcerations.

14      On May 4, 2011, this Court granted Defendants' Motion to

15  Consolidate the case regarding the alleged 2007 incidents with

16  the subsequently filed case, which alleged various claims

17  stemming from Plaintiff's incarceration in 2010.  [ECF No. 26.]

18  Defendants moved to dismiss certain portions of both actions, and

19  those motions were granted in part and denied in part by Orders

20  filed on February 21, 2012, and February 23, 2012.  [ECF Nos. 68,

21  69.]  Plaintiff was accorded leave to amend and was directed to

22  file a single, unitary complaint encompassing both incarcerations.

23  In his resulting Consolidated Second Amended Complaint ("CSAC"),

24  Plaintiff seeks general and special damages, punitive damages,

25  damages for future lost earnings and lost earning capacity, other

26  proven losses, attorneys' fees and costs and declaratory relief.

27  ///

28  ///

1    Presently before the Court is the Motion to Dismiss of

2  Defendants County, McGinness, Boylan, Sotak, Kroner, Felicano,

3  Austin, Hambly, Keillor, Gaddis, Sahba, Bauer and Wilson

4  (collectively "County Defendants").  (See County Defs.' Mot. to

5  Dismiss Pl.'s Cons. Sec. Am. Compl. ["County MTD"], filed

6  June 28, 2012 [ECF No. 80].)  Also before the Court is Defendants

7  Sokolov and Garvey's separately filed Motion to Dismiss and/or

8  Motion for a More Definitive Statement.  (Defs.' Garvey and

9  Sokolov's Mot. to Dismiss and For More Def. Stmt. ["Sokolov

10  MTD"], filed May 31, 2012 [ECF No. 76].)  Also presently before

11  the Court is the County Defendants' Motion to Strike.  (See

12  County Defs.' Mot. to Strike ["MTS"], filed June 28, 2012 [ECF

13  No. 81].)  The Parties stipulated to dismissing Defendant Garvey

14  on May 14, 2012.  [ECF No. 82.]  Defendant Sokolov filed a

15  Statement of Non-Opposition to County Defendants' Motion to

16  Dismiss and Motion to Strike.  [ECF No. 88, 89.]  County

17  Defendants filed a Statement of Non-Opposition to Defendants

18  Sokolov and Garvey's Motion to Dismiss and/or for a More Definite

19  Statement.  [ECF No. 83.]

20    For the reasons set forth below, County Defendants' and

21  Sokolov's motions are granted in part and denied in part.[1]

22  ///

23  ///

24  ///

25  ///

26  ────────────────────

27    [1] Because oral argument will not be of material assistance,
the Court ordered this mater submitted on the briefing.  E.D.
Cal. R. 230(g).

28

1

**BACKGROUND**[2]

2

3       On February 7, 2007, Plaintiff was arrested and incarcerated
4   at the Sacramento County Main Jail ("the Jail") as a pre-trial
5   detainee.  Plaintiff alleges that because of his dark skin color,
6   he was housed with the African-American inmates.  On April 27,
7   2007, Plaintiff suffered a head injury as a result of a racial
8   altercation at the Jail.  Plaintiff was sent to the Emergency
9   Room at the Doctor's Center in Sacramento, where Dr. Gray, M.D.,
10  treated Plaintiff's injury by cleaning and suturing the wound and
11  vaccinating Plaintiff for Tetanus.  The same day, Dr. Gray sent
12  Plaintiff back to the Jail with instructions to remove the
13  sutures in five days, leaving the wound open to air and keeping
14  the wound clean.  Upon Plaintiff's return to the Jail, he was
15  seen by the Jail's medical personnel who evaluated Plaintiff,
16  noted the treatment and vaccination, and referred the matter to a
17  doctor.  Plaintiff informed Jail medical personnel that he had a
18  headache.  Plaintiff alleges that Defendant Hambly reviewed
19  Plaintiff's chart on April 30, 2007.

20      After returning to the Jail, Plaintiff was placed into
21  Administrative Segregation, where he remained for approximately
22  two weeks.  Plaintiff alleges that the unit where he was housed
23  was an indirect supervision unit and that, if he wanted to
24  communicate with the staff, he had to push the call button in his
25  cell.

26  ///

27  _____

28      [2] The following facts are taken from Plaintiff's CSAC,
    unless otherwise noted.

4

Plaintiff claims that many of his calls went unanswered, and that when the calls were answered, he was told "we are working on it" and to "stop using the call button," and finally to "stop complaining." Eventually, the Jail staff stopped answering Plaintiff's calls altogether. Plaintiff further alleges that, without running water in his cell and regular showers, he could not keep his wound clean as prescribed by Dr. Gray.

Plaintiff was moved to a regular cell and immediately requested medical care. Defendant Hank allegedly saw Plaintiff on May 13, 2007. Plaintiff informed Hank that he had been suffering from headaches for the past four days. Hank consulted with Defendant Dr. Smith who ordered the stitches removed and gave Motrin to Plaintiff.

On or about May 14, 2007, Plaintiff again sought medical attention, complaining of headaches, sensitivity to light and a nasal drip. Plaintiff was examined by a nurse, Jim Austin, and was returned to his cell. On or about May 17, 2007, Plaintiff collapsed while taking a shower when he lost control of his legs. Defendant Officer Gaddis responded to Plaintiff's request for help, but allegedly failed to use the radio to properly alert medical and custody staff of the emergency. According to Plaintiff, Gaddis also failed to file an incident or casualty report following the incident in violation of Jail policy. When Plaintiff was wheeled in a wheelchair for evaluation, he told Defendant Hank about his unexplained loss of use of his extremities and collapse. Plaintiff alleges that Hank failed to conduct an adequate medical assessment of a patient presenting with an apparent spinal cord injury or neurological disorder.

1 Carl ordered Plaintiff returned to his cell without arranging for

2 any medical follow up.

3       On May 18, 2007, Plaintiff had a sudden and acute loss of

4 vision in his left eye and started noticing that he was not able

5 to move his lower extremities.  He was also suffering from

6 urinary retention and constipation.  He repeatedly rang the

7 emergency bell to summon help and informed the officers on duty

8 that his legs did not work, that he could not urinate and that he

9 was going blind, but was told to stop using the call button and

10 that "these things would not kill him."

11       On May 20, 2007, at 11:44 a.m., Defendant Carl saw Plaintiff

12 and referred him to see Defendant Dr. Smith.  Smith saw Plaintiff

13 at 12:30 p.m., but allegedly "failed to provide any meaningful

14 evaluation of Tandel's medical condition."  At 9:45 p.m.,

15 Dr. Horowitz evaluated Plaintiff.  Plaintiff claimed to be

16 suffering from vision loss, an inability to move or control his

17 extremities, get up to "void or defecate," and other neurological

18 impairments.  Dr. Horowitz sent Plaintiff to a local emergency

19 room where he was found to have an expansive lesion in the spine

20 and brain involvement.

21       On May 21, 2007, Plaintiff was admitted to the University of

22 California, Davis, Medical Center ("UCD").  Upon admission,

23 Plaintiff was found to have bilateral lower extremity

24 paraparesis, vision loss, weakness in his upper extremities,

25 constipation, renal insufficiency and neurogenic bladder, fever

26 and elevated white blood cell count.

27 ///

28 ///

Because Plaintiff's medical history allegedly did not accompany him to the hospital, the UCD treating physicians were unaware of the treatment already rendered to Plaintiff, but the physicians immediately commenced procedures for Central Nervous System ("CNS") disorders.

UCD diagnosed Plaintiff with Acute Disseminated Encephalomyelitis ("ADEM").  ADEM is a neurological disorder characterized by inflammation of the brain and spinal cord caused by damage to the myelin sheath.  Vaccination for Tetanus is allegedly a known cause of ADEM.  Upon further testing at Stanford University Medical Center, Tandel's diagnosis was ultimately adjusted to include the related neuroimmunologic disorder of the CNS known as Neuromyelitis Optica ("NMO").  NMO attacks the optic nerve and a person with NMO is at risk for multiple attacks.

Plaintiff alleges that due to the failure to provide timely treatment, he suffered permanent and complete T6 paraplegia with bilateral, severe neuropathic pain and neurogenic bladder and bowels.  While Plaintiff's condition improved with treatment, he still remains dependent for his activities in daily living and must use a catheter and diaper.  Plaintiff alleges ongoing serious bouts of depression and emotional distress.

In 2007, Plaintiff was released from the Jail because of the nature and severity of his condition.  Following his release, Plaintiff achieved significant medical improvement with appropriate treatment through UCD.

///

///

7

In 2009, Plaintiff filed a lawsuit against the County and a number of individual defendants under 42 U.S.C. § 1983, alleging his civil rights' violations during the 2007 detention.  (See Pl.'s Second Am. Compl., Case No. 2:09-cv-0842-MEC-GGH [ECF No. 43].)

On March 23, 2010, Plaintiff was again arrested and detained as a pretrial detainee at the Jail.  At the time of his 2010 arrest, Plaintiff required a wheelchair and was unable to move from the nipple line down.  Plaintiff's medical record allegedly indicates that during the 2010 detention, all Defendants were aware of Plaintiff's serious neurologic autoimmune disease and were aware that Plaintiff required appropriate treatment.  According to Plaintiff, Defendants were also aware that Plaintiff suffered from osteoporosis and depression with suicidal ideation.  Plaintiff alleges that, for the entirety of his 2010 incarceration, Defendants denied Plaintiff necessary medical treatment despite Plaintiff's repeated requests for such treatment.

Plaintiff alleges that he requested but was not provided enough catheters to adequately relieve his bladder; requested but was denied adequate and timely suppositories and pads; and was not provided adequate medication to control his pain.  As a result, Plaintiff allegedly routinely urinated on himself and his clothes, was left waiting for assistance in soiled clothes, did not have bowel movements for days and was in severe pain.  Defendant Bauer allegedly advised Plaintiff to reuse the catheters, thereby increasing the risk of infection.
///

8

1    On March 25, 2010, Defendant Sahba allegedly placed
2  Plaintiff on a suicide watch.  Plaintiff was placed on a mattress
3  on the floor without his clothes.  Defendants Sokolov and Sotak
4  allegedly were aware of this situation.  According to Sokolov,
5  the Jail's psychiatric unit was unable to handle a patient with
6  his medical condition and who required catheters.  Therefore,
7  Defendants Sokolov, Sahba and Sotak knowingly left Plaintiff "to
8  lay naked, on a mattress on the floor, unable to adequately move,
9  unable to reach the call button, in severe pain, under-medicated,
10 and without adequate supplies or treatment to urinate or defecate
11 cleanly and regularly for a period of three days."  (CSAC ¶ 172.)
12 As a result, Plaintiff allegedly urinated on himself numerous
13 times, was unable to have regular bowel movements and developed
14 bed sores.  Because custodial officers at the Jail allegedly
15 routinely interfered with Plaintiff's access to medical care,
16 Plaintiff's bed sores worsened.

17    On April 9, 2010, Plaintiff complained to the Jail's medical
18 staff of burning on the tip of his penis and so Sahba ordered
19 another medical prescription, a double mattress and a urine
20 culture and a test for sexually transmitted diseases.
21 Plaintiff's neighboring inmate pressed the call button on
22 Plaintiff's behalf several times after hearing Plaintiff
23 screaming in agony, but the medical staff never responded.
24 Plaintiff received medical care on April 11, 2010.  On April 13,
25 2010, Defendant Bauer prescribed an antibiotic to Plaintiff to
26 treat a bed sore on his left leg and a urinary tract infection.
27 ///
28 ///

9

By April 22, 2010, Plaintiff had developed blurry vision in his left eye over the prior two weeks. Defendant Kroner allegedly performed a vision exam but failed to request a necessary neurological referral and instead referred Plaintiff to be seen by a doctor at some point in the future. On April 23, Plaintiff again complained of penile burning, pain in his eye and vision problems. On April 23, 2010, Defendant Sahba documented Plaintiff's left eye blurriness with history of ADEM. Sahba requested urinalysis and blood work with follow-up in two weeks. Sahba also prescribed an antifungal agent to Plaintiff.

Defendant Bauer allegedly recorded that because Plaintiff's pain had not been well-controlled by Norco-5, he prescribed Morphine and increased his Norco-5 prescription to control Plaintiff's pain. On May 4, 2010, Plaintiff reported to Sotak that he had been experiencing pain, weight loss and episodes of double vision, but Sotak just ordered physical therapy. On May 10, 2010, Sotak transferred Plaintiff to UCD where he was diagnosed with acute right optic neuritis.

Plaintiff alleges that medical Defendants' deliberate indifference resulted in and/or increased the acuteness of his attack and accelerated the recurrence of his disease, which resulted in irreversible damage to new areas of myelin, causing cumulative and permanent disfigurement and disability, as well as decreasing Plaintiff's future opportunity for rehabilitation and decreasing his life expectancy.

///

///

///

10

1
**STANDARD**

2
**A.   Motion to Dismiss**

3

4
On a motion to dismiss for failure to state a claim under

5
Federal Rule of Civil Procedure 12(b)(6),[3] all allegations of

6
material fact must be accepted as true and construed in the light

7
most favorable to the nonmoving party.  Cahill v. Liberty Mut.

8
Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  The Court must

9
also assume that "general allegations embrace those specific

10
facts that are necessary to support a claim."  Smith v. Pacific

11
Props. & Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004).  Rule

12
8(a)(2) "requires only 'a short and plain statement of the claim

13
showing that the pleader is entitled to relief,' in order to

14
'give the defendant a fair notice of what the [. . .] claim is

15
and the grounds upon which it rests.'"   Bell. Atl. Corp. v.

16
Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson,

17
355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6)

18
motion to dismiss does not require detailed factual allegations.

19
Id.  However, "a plaintiff's obligation to provide the grounds of

20
his entitlement to relief requires more than labels and

21
conclusions, and a formulaic recitation of the elements of a

22
cause of action will not do."  Id.  (internal citations and

23
quotations omitted).  A court is not required to accept as true a

24
"legal conclusion couched as a factual allegation."

25
///

26
///

27

28
   [3] All further references to "Rule" or "Rules" are to the
Federal Rules of Civil Procedure unless otherwise noted.

Ashcroft v. Iqbal,129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555).  The Court also is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than a "statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id.  (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id.  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant a leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  Eminence Capital, 316 F. 3d at 1052 (citing DCD Programs, Ltd. v. Leighton, 833 F. 2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

**B.   Motion for a More Definitive Statement**

Before interposing a responsive pleading, a defendant may move for a more definitive statement "[i]f a pleading...is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading...."  Fed. R. Civ. P. 12(e). A Rule 12(e) motion is proper when the plaintiff's complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted.

1  Gay-Straight Alliance Network v. Visalia Unified Sch. Dist., 262

2  F. Supp. 2d 1088, 1099 (E.D. Cal. 2001).

3       Due to the liberal pleading standards in the federal courts

4  embodied in Rule 8(e) and the availability of extensive

5  discovery, courts should not freely grant motions for more

6  definitive statements.  Famolare, Inc. v. Edison Bros. Stores,

7  Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981).  Indeed, a motion

8  for a more definitive statement should be denied unless the

9  information sought by the moving party is not available or is not

10 ascertainable through discovery.  Id.

11

12     **C.   Motion to Strike**

13

14      The Court may strike "from any pleading any insufficient

15 defense or any redundant, immaterial, impertinent, or scandalous

16 matter." (Fed. R. Civ. P. 12(f).)  "[T]he function of a 12(f)

17 motion to strike is to avoid the expenditure of time and money

18 that must arise from litigating spurious issues by dispensing

19 with those issues prior to trial...." Sidney-Vinstein v. A.H.

20 Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  Immaterial matter

21 is that which has no essential or important relationship to the

22 claim for relief or the defenses being pleaded.  Fantasy, Inc. v.

23 Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)(rev'd on other

24 grounds Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994))(internal

25 citations and quotations omitted).  Impertinent matter consists

26 of statements that do not pertain, and are not necessary, to the

27 issue in question.  Id.

28 ///

14

1          **ANALYSIS**

2

3          The Court examines Plaintiff's claims in the following

4    order: (1) Plaintiff's § 1983 claim for failure to provide

5    appropriate medical care against Hambly, Carl, Keillor and Gaddis

6    (First Claim for Relief); (2) Plaintiff's § 1983 claim for

7    failure to provide appropriate medical care against Sokolov

8    (Second Claim for Relief); (3) Plaintiff's claim for retaliation

9    for protesting unconstitutional and unlawful jail conditions

10   against McGinness, Boylan and Bauer (Sixth Claim for Relief);

11   (4) Plaintiff's claim for negligence against McGinness, Boylan,

12   Sotak, Kroner, Felicano, Austin, Bauer, Sahba, Wilson and Sokolov

13   (Tenth Claim for Relief); (5) Plaintiff's claim for medical

14   negligence against Sokolov, Sotak, Bauer and Sahba (Eleventh

15   Claim for Relief); (6) County Defendants' Motion to Dismiss

16   Plaintiff's newly named Doe Defendants; (7) Sokolov's Motion for

17   a More Definitive Statement; and (8) County Defendants' Motion to

18   Strike.

19

20        **A.   First Claim for Relief: Claims Brought Pursuant to
21             42 U.S.C. § 1983 for Violations of the Fourteenth
             Amendment to the United States Constitution for Failure
22           to Provide Appropriate Medical Care against Defendants
             Hambly, Carl, Gaddis, and Keillor in Their Individual
23           Capacities**

24        Plaintiff alleges that the above-enumerated individual

25   County Defendants failed to provide appropriate medical care to

26   Plaintiff during his 2007 incarceration and that he suffered and

27   continues to suffer personal injury and emotional distress and

28   incurred damages as a result of such failure.  (CSAC ¶¶ 336-37.)

                               15

Under 42 U.S.C. § 1983, an individual may sue "[e]very person, who, under color of [law] subjects" him "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  Individual capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law."  Hafer v. Melo, 502 U.S. 21, 25 (1991). Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  Iqbal, 129 S. Ct. at 1948.  Rather, an individual may be liable for deprivation of constitutional rights "within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007). Thus, a plaintiff cannot demonstrate that an individual officer is liable "without a showing of individual participation in the unlawful conduct."  Jones v. Williams, 297 F.3d 930, 935 (9th Cir. 2002).  Plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation," which requires "some fundamental involvement in the conduct that allegedly caused the violation."  Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12 (9th Cir. 2007); Jones, 297 F.3d at 935.

///

///

///

///

16

Government officials acting as supervisors may be liable under § 1983 under certain circumstances.  "[W]hen a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinate."  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).  A defendant may be held liable as a supervisor under § 1983 if there exists "either (1) his or her personal involvement in the constitutional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Starr, 652 F.3d at 1207.

A supervisor's physical presence is not required for supervisory liability.  Starr, 652 F.3d at 1205.  Rather, the requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's Constitutional rights can be established in a number of ways.  The plaintiff may show that the supervisor set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury.  Dubner v. City & County of S.F., 266 F. 3d 959, 968 (9th Cir. 2001); Larez v. City of L.A., 946 F.2d 630, 646 (9th Cir. 1991).  Similarly, a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates may establish supervisory liability.  Starr, 652 F.3d at 1208; Larez, 946 F.2d at 646.

///

1  Finally, a supervisor's acquiescence in the alleged

2  constitutional deprivation, or conduct showing deliberate

3  indifference toward the possibility that deficient performance of

4  the task may violate the rights of others, may establish the

5  requisite causal connection.  Starr, 652 F.3d at 1208; Menotti v.

6  City of Seattle, 409 F. 3d 1113, 1149 (9th Cir. 2005).

7  As opposed to prisoner claims under the Eighth Amendment, a

8  pretrial detainee is entitled to be free of cruel and unusual

9  punishment under the Due Process Clause of the Fourteenth

10  Amendment.[4]  Bell v. Wolfish, 441 U.S. 520, 537 n. 16 (1979);

11  Simmons v. Navajo County, Ariz., 609 F. 3d 1011, 1017 (9th Cir.

12  2010).  The Due Process Clause requires that "persons in custody

13  have the established right to not have officials remain

14  deliberately indifferent to their serious medical needs."

15  Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1187 (9th Cir.

16  2002) (quoting Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir.

17  1996)).  A pretrial detainee's due process right in this regard

18  is violated when a jailer fails to promptly and reasonably

19  procure competent medical aid when the pretrial detainee suffers

20  a serious illness or injury while confined.  Estelle v. Gamble,

21  429 U.S. 97, 104-105 (1976).

22  _____

23  [4] In his first claim for relief, Plaintiff alleges that
County Defendants failed to provide appropriate medical care
during his 2007 incarceration in violation of the Fourteenth

24  Amendment to the Constitution.  It would follow that Plaintiff
was a pre-trial detainee at the time of these alleged violations

25  because Plaintiff only invokes the Fourteenth Amendment.  In his
second claim for relief, however, Plaintiff alleges Defendants

26  failed to provide appropriate medical care during his 2010
incarceration in violation of both the Eighth and Fourteenth

27  Amendments to the Constitution.  This suggests that Plaintiff had
been convicted of a crime during some portion of the 2010

28  incarceration, although the CSAC remains unclear on that point.

Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id.  In order to establish a plausible claim for failure to provide medical treatment, Plaintiff must plead sufficient facts to permit the Court to infer that (1) Plaintiff had a "serious medical need," and that (2) individual Defendants were "deliberately indifferent" to that need.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Cf. Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994).

Plaintiff can satisfy the "serious medical need" prong by demonstrating that "failure to treat [his] condition could result in further significant injury or the unnecessary and wonton infliction of pain."  Jett, 439 F. 3d at 1096 (internal citations and quotations omitted); Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).  Examples of such serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain."  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).  The Court finds that Plaintiff alleges sufficient facts to make a plausible showing that his medical need was serious. Plaintiff suffered a head injury which required sutures, was suffering from persistent headaches, loss of vision, inability to move his lower extremities, and urinary retention and constipation.  (CSAC ¶¶ 43, 55, 74, 81.)

The Court recognizes that such symptoms not only affected Plaintiff's daily activities, but also that a reasonable doctor would find such symptoms noteworthy.

The next issue for the Court is whether individual Defendants were deliberately indifferent to Plaintiff's serious medical need.  The Supreme Court, in Farmer, explained in detail the contours of the "deliberate indifference" standard. Specifically, individual Defendants are not liable under the Fourteenth Amendment for their part in allegedly denying necessary medical care unless they knew "of and disregard[ed] an excessive risk to [Plaintiff's] health and safety."  Farmer, 511 U.S. at 837; Gibson, 290 F.3d at 1187-88.  Deliberate indifference contains both an objective and subjective component: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference."  Farmer, 511 U.S. at 837.  "If a person should have been aware of the risk, but was not," then the standard of deliberate indifference is not satisfied "no matter how severe the risk."  Gibson, 290 F.3d at 1188 (citing Jeffers v. Gomez, 267 F.3d 895, 914 (9th Cir. 2001)).  Plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall on inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842.

///

///

///

1    Important for purposes of the motions at issue, "[w]hether a
2  prison official had the requisite knowledge of a substantial risk
3  is a question of fact subject to demonstration in the usual ways,
4  including inference from circumstantial evidence, . . . and a
5  fact finder may conclude that a prison official knew of a
6  substantial risk from the very fact that the risk was obvious."
7  Id. (emphasis added) (internal citations omitted); see also
8  Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003)
9  ("Much like recklessness in criminal law, deliberate indifference
10  to medical needs may be shown by circumstantial evidence when the
11  facts are sufficient to demonstrate that a defendant actually
12  knew of a risk of harm.").

13    "The indifference to medical needs must be substantial; a
14  constitutional violation is not established by negligence or 'an
15  inadvertent failure to provide adequate medical care.'"
16  Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995)
17  (quoting Estelle, 429 U.S. at 105-06).  Generally, defendants are
18  "deliberately indifferent to a prisoner's serious medical needs
19  when they deny, delay, or intentionally interfere with medical
20  treatment."  Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir.
21  2002); Lolli, 351 F.3d at 419.  However, "[i]solated incidents of
22  neglect do not constitute deliberate indifference."  Bowell v.
23  Cal. Substance Abuse Treatment Facility at Concord,
24  No. 1:10-cv-02336, 2011 WL 2224817, at *3 (E.D. Cal. June 7,
25  2011) (citing Jett, 439 F.3d at 1096).
26  ///
27  ///
28  ///

Further, a mere delay in receiving medical treatment, without more, does not constitute "deliberate indifference," unless the plaintiff can show that the delay caused serious harm to the plaintiff.  Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990).

1.    **Defendant Hambly**

Plaintiff alleges that Defendant Hambly, as a treating physician, was deliberately indifferent to his serious medical needs.  (Pl.'s Opp. at 11:19-21.)  Plaintiff alleges that Dr. Hambly "evaluated Tandel's medical condition and provided him a small amount of Bacitracin, an antibiotic."  (CSAC ¶ 47.) Plaintiff further alleges that Hambly allowed "[Plaintiff] to be placed into Administrative Segregation" and did not arrange for a follow-up medical visit.  (Pl.'s Opp. at 11:25-28.)  The Court finds that these allegations are insufficient to demonstrate that Hambly was deliberately indifferent as a treating physician. Nowhere in the CSAC does Plaintiff allege that Hambly, as Plaintiff's treating physician, personally denied, delayed, or intentionally interfered with Plaintiff's medical treatment.  See Hallett, 296 F.3d at 744; Lolli, 351 F. 3d at 419.  Allegations that Hambly provided Tandel with an antibiotic and allowed him to be placed into Administrative Segregation without ensuring he had any medical follow-up are insufficient to demonstrate that Hambly was deliberately indifferent to Plaintiff's serious medical needs.
///

1    Similarly absent from the CSAC are any allegations of
2  Hambly's supervisory liability.  Plaintiff alleges that Hambly
3  was responsible for the supervision and training of all medical
4  providers in the main jail in 2007, and that he failed to ensure
5  that all nurses were properly trained and supervised, which
6  resulted in Tandel's injury.  (Pl.'s Opp. at 12:2-8.)  Plaintiff
7  further alleges that Hambly participated in meetings discussing
8  environmental factors which impact health, such as overcrowding,
9  and that he was on notice of the jail's custom and practice of
10  failing to provide medical care for its inmates.  (Id. at
11  12:9-13, 21-22.)  But, as the Court explained earlier, a
12  statement that a defendant was employed in a supervisory capacity
13  and acted within the scope of his employment is not sufficient,
14  by itself, to infer that the defendant should be personally
15  liable for Plaintiff's alleged constitutional deprivations.
16    Plaintiff relies on Starr and Redman to sustain his claim
17  that Dr. Hambly should be found deliberately indifferent as a
18  supervisor.  (Pl.'s Opp. at 12:8-22.)  In Redman, a plaintiff
19  specifically alleged that the Sheriff was ultimately in charge of
20  the facility's operations, that the Sheriff knew that the
21  facility was not a proper place to detain the plaintiff and posed
22  a risk of harm to the plaintiff, but placed the plaintiff there
23  anyway.  Redman, 942 F.2d at 1446-47.  In Starr, the plaintiff
24  similarly alleged that the Sheriff knew of the unconstitutional
25  activities in the jail, including that his subordinates were
26  engaging in some culpable actions.  Starr, 652 F.3d at 1208.
27  ///
28  ///

23

In fact, the plaintiff's complaint in Starr contained numerous specific factual allegations demonstrating the Sheriff's knowledge of unconstitutional acts at the jail and the Sheriff's failure to terminate those acts, including that the U.S. Department of Justice gave the Sheriff clear written notice of a pattern of constitutional violations at the jail, that the Sheriff received "weekly reports from his subordinates responsible for reporting deaths and injuries in the jails," that the Sheriff personally signed a Memorandum of Understanding that required him to address and correct the violations at the Jail, and that the Sheriff was personally made aware of numerous concrete instances of constitutional deprivations at the jail. Id. at 1209-12.

Here, on the other hand, Plaintiff's CSAC does not contain sufficient factual allegations demonstrating that Hambly was aware of Plaintiff's constitutional deprivations or of any other wrongful acts by Jail personnel.  Dr. Hambly was not the interim medical director until the beginning of 2007, and yet most of Plaintiff's allegations that Dr. Hambly was on notice rely on reports made before he assumed this post.  Accordingly, Plaintiff has not pleaded sufficient facts to support the inference that Hambly was deliberately indifferent to Plaintiff's medical needs. Inasmuch as leave to amend has already been accorded, the Court now dismisses Defendant Hambly from Plaintiff's first claim for relief.

///

///

///

24

1                    **2.   Defendant Carl**

2

3        Nurse Carl evaluated Plaintiff on three occasions.  On

4   May 13, 2007, Nurse Carl saw Plaintiff when Plaintiff complained

5   about persistent headaches.  (CSAC ¶ 66.)  Nurse Carl consulted

6   with Dr. Smith, who ordered Plaintiff's stitches to be removed

7   and pain medication to be administered.  (Id. ¶ 68.)  On May 17,

8   2007, after Plaintiff collapsed in the shower, Plaintiff again

9   saw Nurse Carl.  (Id. ¶¶ 71-74.)  Plaintiff alleges that Carl

10  "failed to engage in even the most rudimentary of the tests for

11  [Central Nervous System] disorders even after being alerted to

12  the new symptoms. . . ."  (Id. ¶ 79.)  Plaintiff further alleges

13  that Carl cleared Plaintiff, without arranging for any medical

14  follow-up.  (Id.)  On May 20, 2007, after Plaintiff started

15  complaining about vision loss, urinary retention and

16  constipation, in addition to inability to move his lower

17  extremities and persistent headaches, Carl again saw Plaintiff

18  and referred Plaintiff to see Dr. Smith.  (Id. ¶¶ 81-82, 86, 89.)

19  Plaintiff's allegations against Carl still do not rise to the

20  level of deliberate indifference.  On the contrary, as previously

21  stated in the first Order, Plaintiff's allegations demonstrate

22  that each time Carl saw Plaintiff, he evaluated Plaintiff's

23  complaints and twice referred Plaintiff to a doctor.  While

24  Plaintiff's allegations concerning the incident on May 17 permit

25  the Court to infer that Carl might have been negligent in sending

26  Plaintiff back to the cell, nothing in the CSAC suggests that

27  Carl knew "of a substantial risk of serious harm," but chose to

28  disregard it.  See Gibson, 290 F.3d at 1187-88.

                                   25

Carl evaluated Plaintiff three times, but was unable to determine or diagnose the cause or reason for his pain and symptoms.  (Id. ¶¶ 66-67, 74, 86).  Plaintiff's own allegation that, on May 17, Carl failed to follow the Standardized Nursing Procedure, supports the inference of negligence, not deliberate indifference.  Because one isolated incident of neglect does not demonstrate "deliberate indifference," the Court dismisses Defendant Carl from Plaintiff's first claim.  See Jett, 439 F.3d at 1096.

### 3. Defendant Gaddis

Plaintiff alleges that Officer Gaddis did not adequately respond as the Control Booth Operator to Tandel's requests for medical assistance. (CSAC ¶¶ 72-73, 331.)  Plaintiff specifically alleges that "Gaddis's failure to properly summon help through the radio, as is Jail policy, resulted in a delay of necessary medical care" and that on July 18, Gaddis "ignored his request for medical care, ignored the call button which was used to request medical treatment on Tandel's behalf, and admonished Tandel for using the call button to request medical treatment." (Pl.'s Opp. at 18:12-17.)  The Court finds these allegations insufficient to state a claim of deliberate indifference against Officer Gaddis.  The only plausible allegation that can lead to the inference of deliberate indifference on the part of Officer Gaddis is that he delayed alerting the medical staff of Plaintiff's medical needs.  However, the CSAC fails to allege how significant the delay was and how the delay harmed Plaintiff.

See Hertig v. Cambra, No. 1:04-cv-5633, 2009 WL 62126, at *4 (E.D. Cal. Jan. 8, 2009) (citing Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)) ("[A] delay in receiving medical care, without more, is insufficient to state a claim against a jailor for deliberate indifference unless the plaintiff can show that the delay in treatment harmed him."). Plaintiff does not provide evidentiary support for his conclusion that the delay resulted in a deterioration of his condition and eventual paralysis. (See CSAC ¶ 83.)

Moreover, "[t]o have acted with deliberate indifference, . . . the officers also must have inferred . . . that [the plaintiff] was at serious risk of harm" if he did not receive immediate medical attention. Lolli, 351 F.3d at 420. The CSAC fails to provide any evidence beyond mere conclusions that Gaddis knew that Plaintiff was at serious risk of harm if he did not receive immediate medical attention. Accordingly, Plaintiff's first claim against Defendant Gaddis is also dismissed.

### 4.    Defendant Keillor

Plaintiff alleges that Sergeant Keillor was employed at all relevant times as supervisory custodial staff at the Jail, and that Sergeant Keillor was responsible for supervising custodial staff at the Jail. (CSAC ¶ 322.)

///

///

///

///

Plaintiff alleges in his Consolidated Opposition that Keillor "failed to prevent Gaddis and other officers in her control, from ignoring Tandel's requests for medical care, ignoring the call button which was used to request medical treatment, and admonishing Tandel for using the call button to request medical treatment."  (Pl.'s Opp. at 19:23-25.)

As Keillor's alleged liability is based on his supervisory status, Plaintiff must demonstrate Keillor's "'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference of others.'"  Starr, 652 F.3d at 1205-06 (quoting Larez, 946 F.2d at 646).  Plaintiff does not plead sufficient facts to support the inference that Defendant Keillor was deliberately indifferent to Plaintiff's medical needs.  Rather, Plaintiff states evidence of Keillor's actions that suggest Keillor acted properly as a supervisor. Plaintiff said Keillor was not on duty during the May 17, 2007 incident and that she was "concerned" that she had not been notified when her duties as custody supervisor commenced later that day.  (CSAC ¶¶ 323-24.)  In fact, Keillor acted by reporting Gaddis for not properly notifying custody and medical personnel and provided Gaddis with training materials.  (Id. at ¶¶ 324-25.) Clearly, Keillor intervened by reporting Gaddis's negligent act and by providing her with the appropriate training materials. Moreover, Plaintiff fails to allege any facts suggesting that Keillor knew of the alleged constitutional violations before they occurred and failed to act to prevent them.

Thus, Plaintiff does not adequately allege a deliberate indifference claim against Keillor.

Additionally, as clearly stated in the previous Order, there can be no showing that supervisory defendants should be held liable under § 1983 without a showing that their subordinates violated Plaintiff's constitutional rights.  Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001).  Thus, again, Plaintiff cannot demonstrate that Keillor, as a supervisor, was deliberately indifferent to Plaintiff's serious medical needs without first demonstrating that Keillor's subordinate, Defendant Gaddis, committed a constitutional violation.  Accordingly, the Court dismisses Defendant Keillor from Plaintiff's first claim.

      **B.**    **Second Claim for Relief: Claims Brought Pursuant to 42 U.S.C. § 1983 for Violations of the Eighth and Fourteenth Amendment to the United States Constitution for Failure to Provide Appropriate Medical Care against Defendant Gregory Sokolov in His Individual Capacity**

Plaintiff alleges that Dr. Sokolov failed to provide appropriate medical care during his 2010 incarceration in violation of the Eighth and Fourteenth Amendments.  Courts use a similar "deliberate indifference" standard for claims brought under the Eighth Amendment for convicted prisoners and the Fourteenth Amendment for pre-trial detainees.  See Gibson v. Cty. of Washoe, 290 F.3d 1175, 1187, 1190 n.9 (9th Cir. 2002).  Thus, the Court will not readdress the legal standard for Plaintiff's second claim because it was outlined above for Plaintiff's first claim for violation of the Fourteenth Amendment.

///

1    Plaintiff alleges that (1) Sokolov provided psychiatric

2   services to Sacramento Main Jail inmates, including Mr. Tandel,

3   under a contract the County of Sacramento maintains with the

4   University of California Davis (Pl.'s Opp. at 4:1-3.); (2) On

5   March 25, 2010, Sokolov refused to admit Tandel into the

6   psychiatric unit of the jail, despite his alleged acute and

7   suicidal state, because of his need for medical care that the

8   psyche unit at the jail was ill-equipped to provide, (Id. at

9   3:5-7.); (3) Sokolov knowingly left Plaintiff to lay naked on a

10  mattress on the floor, unable to adequately move, unable to reach

11  the call button, in severe pain, under-medicated and without

12  adequate supplies or treatment to urinate or defecate cleanly and

13  regularly, (CSAC ¶ 172.); (4) As a result of placing Tandel in a

14  jail cell in the medical unit of the jail, Plaintiff suffered

15  infection resulting in permanent neurological and spinal cord

16  damage and extreme pain and suffering.  (Pl.'s Opp. at 3:8-11.)

17   The Court finds that, based on the specific factual

18  allegations in the CSAC and Plaintiff's Opposition, Plaintiff

19  fails to adequately allege deliberate indifference as to

20  Plaintiff's serious medical condition.  Sokolov suggested Tandel

21  be placed in the medical unit on suicide watch because he did not

22  believe the psychiatric unit was equipped to meet Plaintiff's

23  needs, which presumably shows lack of deliberate indifference

24  because it was motivated by his desire to find adequate care for

25  Plaintiff.  (Id. at 6:16-19.)  Plaintiff does not show that

26  Sokolov knew or should have known that Plaintiff's medical needs

27  would not be adequately met in the infirmary.

28  ///

Moreover, even if Plaintiff's medical needs were not met in the infirmary, that does not mean Sokolov should be held liable for the alleged wrongdoing that occurred while Plaintiff was under the care of the CHS medical providers because he was not responsible for Plaintiff's medical needs, but only his psychiatric needs.  Moreover, Plaintiff was seen by a psychiatric nurse while he was in the medical infirmary because he was on suicide watch.  (CSAC ¶ 167.)  Accordingly, the Court grants Defendant Sokolov's Motion to Dismiss Plaintiff's second claim for relief as to Sokolov.

### C. Plaintiff's Sixth Claim for Relief: Claims Brought Pursuant to 42 U.S.C. § 1983 for Violations to the First Amendment to the United States Constitution for Retaliation for Protesting Regarding Unconstitutional and Unlawful Jail Conditions Against Defendants McGinness, Boylan, and Bauer

Plaintiff alleges that McGinness, Boylan and Bauer acted "in retaliation for Plaintiff Tandel's pending lawsuit." (CSAC ¶ 432.)  Plaintiff alleges that Bauer "inexplicably" reduced Plaintiff's pain medication after his deposition on April 14, 2010. (Id. ¶ 192.)  Further, Plaintiff alleges that McGinness and Boylan "through Bauer" failed to provide adequate and effective pain management. (Id. ¶ 431.)  Plaintiff also alleges that McGinness and Boylan "intentionally allowed Tandel to remain at the jail and did not ensure that his known medical needs were met." (Id. ¶ 430.)  Plaintiff alleges that as a result of these alleged acts, he "suffered a predictable exacerbation of a condition." (Id.)
///

In order to state a claim for retaliation, Plaintiff must demonstrate that: (1) the Jail officials took an adverse action against him; (2) the adverse action was taken because Plaintiff engaged in the protected conduct; (3) the adverse action chilled Plaintiff's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose, such as preserving institutional order and discipline. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005); Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994).

Plaintiff fails to adequately state a claim for retaliation because he has not stated facts demonstrating that these Defendants took an adverse action against him.  Plaintiff's allegation that Bauer "inexplicably" reduced Plaintiff's pain medication is unfounded because Plaintiff stated in his CSAC that Bauer had prescribed the two tablets of the medication to be taken three times a day for "just two days beginning on April 13, and ending on 14th."  (CSAC ¶ 190.)  Accordingly, Bauer reduced the prescription on April 15, 2010.  (Id. ¶ 192.)  Moreover, Bauer did not disregard the pain that Plaintiff was suffering; in fact, Bauer changed Plaintiff's medication on April 13, 2010, because the medication he was taking then turned out to be inadequate.  (Id. ¶ 190.)  When Bauer saw Tandel again less than two weeks later, he increased his prescribed dosage of the medication after noticing that it was not controlling the pain. (Id. ¶ 205.)  Thus, Bauer's actions were not "inexplicable" and so Bauer's actions do not rise to a level the Court can consider to be retaliation.

///

32

1  Accordingly, County Defendants' Motion to Dismiss Plaintiff's

2  Sixth Claim for Relief against Bauer is granted.

3       Plaintiff further alleges that McGinness and Boylan acted

4  through Bauer in retaliating, but these allegations are inadequate

5  given that the Court finds that Bauer did not take an adverse action

6  against him.  Moreover, Plaintiff claims that McGinness and Boylan

7  retaliated by intentionally allowing Plaintiff to remain at the jail

8  and no steps were taken to continue his pain management.  (Id. ¶

9  430.)  This claim is similarly unfounded because Plaintiff's CSAC

10  describes steps taken to continue Plaintiff's pain management,

11  including Bauer's prescription of pain medication and the fact that

12  Plaintiff was seen on multiple occasions by medical personnel at the

13  jail during his pending litigation.  (See, e.g., id. ¶¶ 190, 194,

14  200.)  Accordingly, County Defendants' Motion to Dismiss Plaintiff's

15  Sixth Claim for Relief against McGinness and Boylan is granted.

16

17       **D.   Plaintiff's Tenth Claim for Relief: Claims Brought for
            Negligence Against Defendants McGinness, Boylan,**

18       **Felicano, Austin, Wilson, Sotak, Kroner, Sahba, Bauer,
            and Sokolov in Their Individual Capacities**

19

20       Plaintiff re-alleges that Defendants "negligently, carelessly

21  and unskillfully cared for, attended to, handled, controlled and

22  failed to supervise, monitor and attend to Tandel and/or failed to

23  refer him to medical care providers, negligently failed to provide

24  physician's care and carelessly failed to detect and monitor his

25  condition, and negligently, carelessly and unskillfully failed to

26  possess and exercise the degree of skill and knowledge ordinarily

27  possessed and exercised by others in the same profession and in the

28  same locality as Defendants."  (CSAC ¶ 462.)

According to Plaintiff, Defendants also failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing and to timely refer Plaintiff for medical and/or hospital care.  (Id. ¶ 463.) Plaintiff further alleges that the supervisory defendants failed to conduct appropriate investigatory procedures to determine the need to obtain medical care for Plaintiff, and failed to have proper investigation and reports of allegations of subordinates' wrongful conduct.  (Id. ¶ 464.)

According to Plaintiff, the Defendants listed knew or had reason to know that Plaintiff was in need of immediate medical care, and ongoing follow-up medical care, and failed to take reasonable action to procure such medical care.  (Id. ¶ 465.)  As a result, Plaintiff allegedly suffered damages.  (Id. ¶ 466.)

Plaintiff does not seek negligence liability against the County or any official capacity Defendant and so the Court will not address these issues.  (Pl.'s Opp. at 23:8-11.)

### 1.   Defendants McGinness and Boylan

Plaintiff alleges that McGinness and Boylan were negligent in their training, hiring and supervision.  The Court granted Defendants' previous Motion to Dismiss Plaintiff's negligence claim with regard to these Defendants and Plaintiff's CSAC fails to allege adequate additional facts to change that determination. Plaintiff alleges that McGinness and Boylan were aware of the deficiencies of the jail, and yet continued to have Tandel detained there.

In its previous Order, the Court did not consider this conclusory allegation, standing alone, as sufficient to support a viable claim for negligence.  Since Plaintiff has made no attempt in the CSAC to flesh out that claim further, it remains just as inadequate now as it was previously.  Therefore, County Defendants' Motion to Dismiss Plaintiff's negligence claim against McGinness and Boylan is granted.

### 2.   Defendant Austin

Plaintiff does not allege any adequate additional facts that Austin negligently treated Tandel, on or about May 14, 2007, in his CSAC.  Thus, the Court finds that County Defendants' Motion to Dismiss Plaintiff's negligence claim against Austin is without merit and County Defendants' Motion to Dismiss Plaintiff's claim for negligence as to Austin is granted.

### 3.   Defendant Felicano

Plaintiff alleges that Felicano is a medical provider who had a duty to render medical care to Tandel and that she allegedly denied Tandel half of the number of catheters he reportedly needed.  (CSAC ¶¶ 25, 150.)  Plaintiff alleges that Felicano's denial of adequate sterile catheters put Tandel at risk of a urinary tract infection, kidney damage, bed sores and other maladies which can and did have profound effects on him. (Id. ¶ 153.)
///

35

Plaintiff alleges adequate additional facts regarding Nurse
Practitioner Felicano to survive a motion to dismiss a claim for
negligence.  Accordingly, County Defendants' Motion to Dismiss
Plaintiff's claim for negligence as to Felicano is denied.

### 4.   Defendant Wilson

Plaintiff alleges that Wilson "was responsible for ensuring
inmates, including Tandel, had access to medical care and
treatment, and failed to provide Tandel with access to necessary
medical treatment." (Pl.'s Opp. at 23:18-20.)  Yet, Plaintiff
alleged in his First Amended Complaint ("FAC") that Wilson had in
fact summoned medical care for Plaintiff.  (FAC ¶ 71.)  Plaintiff
further alleges that Wilson delayed Plaintiff's medical care, but
this isolated incident is inadequate to show negligence.  (CSAC
¶ 255.)  Accordingly, County Defendants' Motion to Dismiss
Plaintiff's claim for negligence as to Wilson is granted.

### 5.   Defendant Sokolov

Plaintiff fails to adequately allege a negligence claim for
Defendant Sokolov.  As stated previously with respect to
Plaintiff's Second Claim for Relief, Sokolov did not believe the
psychiatric unit could adequately meet Plaintiff's needs given
his medical condition.  Thus, Sokolov recommended that Plaintiff
be placed in the medical infirmary on suicide watch, and so a
psychiatric nurse visited him at the medical infirmary.
///

Based on this action, Plaintiff cannot show that Sokolov was negligent in not allowing Plaintiff to enter the psychiatric ward because Sokolov knew that the ward would not meet Plaintiff's medical needs.  Beyond this decision to place Plaintiff in the medical infirmary, Sokolov did not have control over the alleged wrongdoings that occurred during Plaintiff's medical treatment. Accordingly, Defendant Sokolov's Motion to Dismiss Plaintiff's Tenth Cause of Action as to Sokolov is granted.

### 6.   Defendants Sahba, Sotak, Bauer and Kroner

This Court has already ruled that Plaintiff alleged sufficient facts to sustain a cause of negligence against Sahba, Sotak, Bauer and Kroner.  [ECF No. 69 at 70:16-21.]  Accordingly, County Defendants' Motion to Dismiss Plaintiff's Negligence claims against Sahba, Sotak, Bauer and Kroner is denied.

### E.   Plaintiff's Eleventh Cause of Action: Claims Brought for Medical Negligence Against Defendants Sotak, Bauer, Sokolov and Sahba

Plaintiff's Eleventh Cause of Action alleging medical negligence against the medical Defendants Sotak, Bauer, Sokolov and Sahba is similar to his Tenth Cause of Action alleging negligence.

///
///
///
///

Plaintiff alleges in his Eleventh Cause of Action that the medical defendants "failed to refer him to specialist psychiatric care providers, negligently failed to provide psychiatric and psychological care, and carelessly failed to detect, monitor and follow-up on Tandel's deteriorating psychological condition, thus negligently, carelessly, and unskillfully failing to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants." (CSAC ¶ 467.)  The Court dealt with similar allegations in Plaintiff's general negligence claim and so it does not need to further analyze them here.  For the reasons stated in Plaintiff's Tenth Cause of Action with respect to all four medical Defendants, and in the Court's previous order on Plaintiff's claim for negligence against Sotak, Bauer and Sahba, the Court finds that Plaintiff's claim of medical negligence against Sokolov is inadequate, but his claims of medical negligence against Sotak, Bauer and Sahba are adequate. Accordingly, Defendant Sokolov's Motion to Dismiss Plaintiff's Eleventh Cause of Action as to Sokolov is granted.  County Defendants' Motion to Dismiss as to Sotak, Bauer and Sahba is denied.

Defendant does not seek medical negligence liability against Kroner, the County or any official capacity Defendant and so the Court will not address the County Defendants' Motion to Dismiss regarding these parties.  (Pl.'s Opp. at 23:8-11.)

///

///

///

**F.    County Defendants' Motion to Dismiss Newly Named Doe Defendants**

County Defendants argue that Plaintiff failed to request leave of court for the substitution of Defendants Mark Iwasa, Shelley Jordan, Deputy Jacoby, Deputy Medeiros and Jim Austin, in the place of DOE Defendants.  County Defendants consequently contend that the inclusion of these individuals in the CSAC is improper.

While not technically correct in terms of the procedure proposed, the Court nonetheless finds good cause to allow Plaintiff to name DOE Defendants in this consolidated action. Plaintiff was granted leave to amend and consolidate his complaint, and while Plaintiff was not expressly granted leave to name the DOE Defendants, the Court will overlook this procedural deficiency since Plaintiff has shown in his papers that the inclusion of those individuals herein is proper.  Specifically, Plaintiff sought leave to amend to name said Defendants in his Consolidated Opposition dated June 28, 2012, and demonstrated why each Defendant belonged in this lawsuit.  [ECF No. 90 at 28:15-18.]  The Court therefore has before it all necessary information to grant leave to name DOE defendants and therefore the filing of a subsequent motion would be redundant and unnecessary.  Accordingly, County Defendants' Motion to Dismiss the newly named DOE Defendants is denied.

///

///

///

///

### G.   Sokolov's Motion for a More Definitive Statement

Defendant Sokolov's motions to dismiss were granted; therefore, his Motion for a More Definite Statement is deemed as moot.

### H.   County Defendants' Motion to Strike

County Defendants move the Court pursuant to Rule 12(f) of the Federal Rules of Civil Procedure for an order striking fifteen statements from Plaintiff's CSAC.  (MTS)  The portions Plaintiff moves to strike are alleged conversations between Plaintiff's counsel and County Defense counsel regarding Plaintiff's medical condition during his 2010 incarceration at the Main Jail.  (Id. at 2-4.)  County Defendants contend that "Plaintiff's allegations regarding such conversations are highly inappropriate and raise the prospect that both Plaintiff's counsel and Defense counsel would become witnesses in this case in support of Plaintiff's claims."  (Defs.' Memo. in Support of MTS at 2:1-3.)

Knowledge of the attorney is imputed to his client "where the knowledge of the attorney has been gained in the course of the particular transaction in which he has been employed by that principal."  Zirbes v. Stratton, 187 Cal. App. 3d 1407, 1413 (Cal. App. 2d Dist. 1986).  County Defense counsel had already been retained for the 2007 lawsuit at the time that these alleged conversations took place during the time of Plaintiff's 2010 incarceration.

1    The 2007 and 2010 cases are so similar that the lawsuits have
2    been consolidated by this Court.  Thus, it is safe to say that
3    County Defense counsel had already been retained for the 2007
4    case at the time of the conversations in 2010, and that therefore
5    the knowledge of Defense counsel is imputed to Defendants.  (See
6    id.)  Accordingly, conversations between Plaintiff's counsel and
7    County Defense counsel regarding Plaintiff's condition during his
8    2010 incarceration and allegations impute knowledge to County
9    Defendants.  County Defendants' Motion to Strike these portions
10   is therefore denied.

11        Denying County Defendants' Motion to Strike these portions
12   of the Complaint does not require County Defense counsel to waive
13   the attorney-client privilege.  The Court understands that County
14   Defense counsel was retained for the purpose of litigation only,
15   but counsel was retained prior to these alleged conversations and
16   therefore it is assumed that the prudent counsel would have
17   informed County Defendants of information regarding the
18   litigation.  Given that knowledge of a lawyer is knowledge of the
19   client, the Court's decision not to strike these portions does
20   not prejudice the County Defendants because counsel does not need
21   to admit or deny that counsel shared this information with the
22   Defendants because such action is presumed.  (See id.)

23        Moreover, County Defendants contend that Plaintiff has
24   already identified County Defense counsel as a witness.  The fact
25   that counsel is a potential witness is not a reason to strike
26   these portions of the CSAC.

27   ///

28   ///

Plaintiff has every right to call County Defense counsel as a witness with respect to his knowledge and/or participation in the circumstances surrounding Plaintiff's 2010 incarceration during the time of that imprisonment.

County Defendants have failed to demonstrate that any of the portions moved to be stricken are irrelevant, prejudicial or otherwise admissible.  Accordingly, the County Defendants' Motion to Strike is denied.

**CONCLUSION**

For the reasons stated above, County Defendants' and Defendant Sokolov's motions are granted in part and denied in part, consistent with the foregoing, as follows:

1.  With respect to County Defendants' Motion to Dismiss [ECF No. 80]:

a)  Plaintiff's First Claim under § 1983 for failure to provide adequate medical care is GRANTED as to Hambly, Carl, Gaddis and Keillor;

b)  Plaintiff's Sixth Claim under § 1983 for retaliation for protesting is GRANTED as to Bauer, Boylan and McGinness;

c)  Plaintiff's Tenth Claim for negligence is GRANTED as to McGinness, Boylan, Wilson, and Austin, and is DENIED as to Felicano, Sahba, Sotak, Bauer and Kroner;

d)  Plaintiff's Eleventh Claim for medical negligence is DENIED as to Sotak, Bauer and Sahba;

///

1      e)   Defendants' Motion to Dismiss Plaintiff's newly

2 named Doe Defendants is DENIED.

3      2.   With respect to Defendant Sokolov's Motion to Dismiss

4 [ECF No. 76]:

5           a)   Plaintiff's Second Claim under § 1983 for failure

6 to provide adequate medical care is GRANTED as to Sokolov;

7           b)   Plaintiff's Tenth Claim for negligence is GRANTED

8 as to Sokolov;

9           c)   Plaintiff's Eleventh Claim for medical negligence

10 is GRANTED as to Sokolov.

11     3.   Sokolov's Motion for a More Definitive Statement [ECF

12 No. 76] is deemed as moot because his Motion to Dismiss was

13 granted.

14     4.   County Defendants' Motion to Strike [ECF No. 81] is

15 DENIED.

16     Because Plaintiff has already been accorded leave to amend,

17 and since his attempts to plead cognizable claims against the

18 various defendants remain unavailing as set forth above, no

19 further leave to amend will be permitted as to the claims

20 dismissed herein.

21     IT IS SO ORDERED.

22 Dated: August 21, 2012

23

24

25 MORRISON C. ENGLAND, JR.
   UNITED STATES DISTRICT JUDGE

26

27

28

43